# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **VINCENT DOBRSKI,** | : | **Case No. 09-CV-963** |
| **Plaintiff,** | : | |
| | : | **JUDGE KATHLEEN M. O'MALLEY** |
| **v.** | : | |
| **FORD MOTOR COMPANY,** | : | <u>**OPINION & ORDER**</u> |
| **Defendant.** | : | |

Before the Court is Defendant Ford Motor Company's ("Ford") Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Doc. 5.)  This Motion has been fully briefed and is ripe for adjudication.  For the reasons articulated below, Ford's motion to dismiss is <u>**GRANTED**</u> in part and <u>**DENIED**</u> in part.

## I.    <u>BACKGROUND</u>

### A.    Factual Background

The following facts are taken from Plaintiff's Complaint and are accepted as true, as they must be in the context of a Rule 12(b)(6) motion.

#### 1.    Dobrski's Employment with Ford Motor Company

From 1968 until 2007, Plaintiff Vincent Dobrski  ("Plaintiff" or "Dobrski") was employed by Ford Motor Company at its Stamping Plant in Walton Hills, Ohio.  (Doc. 1 at ¶¶ 7-8.)  Dobrski was an active member of the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") and, at the time of his termination in 2007, was running for vice president of the UAW Local 420.  (*Id*. at 10.)

Dobrski alleges that, during the course of his employment with Ford, he was harassed

"concerning his campaign leaflets and other material" relevant to his campaign for vice president. (*Id*. at ¶ 11.)  Dobrski says he also was subjected to harassment for "diligently follow[ing] company safety procedures, specifically the 'lock out' safety procedures."  (*Id*. at ¶ 12.)

### 2.      Dobrski's Discharge from Employment with Ford.

On or about March 21, 2007, Dobrski was terminated from his employment. (Doc. 1 at ¶ 13.) He claims his termination was "without good cause," and that it violated the collective bargaining agreement ("the CBA") governing his employment with Ford.  (*Id*. at ¶¶ 23, 52.)  At the time of his discharge, Dobrski was fifty-six (56) years old.  (*Id*. at ¶ 9.)  Dobrski says he was informed when terminated that he was under investigation, but was not told why.  (*Id*. at ¶ 13.)

Dobrski contends that Ford terminated him for three (3) improper reasons.  First, Dobrski claims that he was terminated "because he ran for elected union office."  (*Id*. at ¶ 42.)  Second, he alleges that he was terminated because of his age.  (*Id*. at ¶¶ 9, 38.)  Third, Dobrski claims that Ford terminated him because of his "concern for safety procedures at the Defendant's facility, and specifically the Defendant's 'lock out' procedures."  (*Id*. at ¶ 43.)

Finally, Dobrski alleges that, although he filed a grievance regarding his termination, the UAW failed to fairly represent him pursuant to the terms of the CBA.  (*Id*. at ¶¶ 15-16.)  Beyond this bare statement, however, there are no other allegations in the Complaint regarding the UAW or its participation in any grievance process on Dobrski's behalf.

### 3.      The Collective Bargaining Agreement

It is undisputed that Dobrski's employment with Ford was subject to the CBA.  (Doc. 1 at ¶¶ 16, 52-53.)  Based on the parties' submissions, it appears there are two relevant bargaining agreements.  The first, the CBA, is a master collective bargaining agreement between the UAW and

2

Ford Motor Company which went into effect September 29, 2003.  (*See* Doc. 5-2 at 3.)[1]  The second

is the 2004 Local Agreement ("Local CBA") between the UAW Local 420 and the Ford Walton Hills

Stamping Plant, which was ratified on May 13, 2004.  (*See id.* at 53.)

### 1.    Grievance Procedure

Pursuant to Article IV, Section 3 of the CBA, Ford:

> retains the sole right to discipline and discharge employees for cause, provided that
> in the exercise of this right it will not act wrongfully or unjustly or in violation of the
> terms of this Agreement. . . Complaints that the Company has violated this paragraph
> may be taken up through the Grievance Procedure provided in this Agreement.

(Doc. 5-2 at 9.)  The CBA provides a multi-stage Grievance Procedure during which

> the Union shall, in the redress of alleged violations by the Company of this
> Agreement or any local or other agreement supplementary hereto, be the exclusive
> representative of the interests of each employee . . . covered by this Agreement, and
> only the Union shall have the right to assert and press against the Company any
> claim, proceeding or action asserting a violation of this Agreement.

(*Id*. at 22 (Article VII, § 1).)  The CBA's detailed four-stage Grievance Procedure culminates in a

final and binding appeal to an impartial umpire.[2]  The CBA provides that "[t]here shall be no appeal

from an Umpire's decision.  It shall be final and binding on the Union, its members, the employee

or employees involved and the Company."  (*Id*. at 29 (Article VII, § 19).)

---

[1]Although the CBA was not attached to the Complaint, it is referred to therein and is
central to many of Plaintiff's allegations.  As a result, the Court can consider the CBA, which is
attached as Exhibit A to Ford's motion to dismiss, in ruling on Ford's Motion to Dismiss.  *See
Whittiker v. Deutsche Bank National Trust Co.*, 605 F.Supp.2d 914, 924-25 (N.D. Ohio 2009).
For those same reasons, the Court can consider the local CBA between Ford and the UAW Local
420 which is attached to Ford's motion as Exhibit B.

[2]First stage grievances involve an oral discussion between the employee and his
supervisor.  (Doc. 5-2 at 22.)  At the second stage, the grievance is reduced to writing on the
form known as "Employee Grievance, Second Stage," and is presented for consideration at the
Unit Grievance Meeting.  (*Id*. at 23.)  Third stage grievances involve proceedings in front of a
Review Board consisting of both union and company representatives.  (*Id*. at 24-26.) Finally, the
fourth stage is an appeal to an impartial umpire.  (*Id*. at 26.)

## 2. Health and Safety Provisions

There are several provisions in the CBA and Local CBA relating to health and safety requirements.  Specifically, the CBA provides that

> The Company shall have the obligation to continue to make reasonable provisions for the safety and health of its employees during the hours of their employment. Local Management is responsible for implementing these provisions at each location with the objective of maintaining a safe and healthy work environment. The Union shall cooperate with the Company's efforts to carry out its obligations.

(Doc. 5-2 at 35 (Article X, § 4).)  The CBA further sets forth a special procedure for health and safety grievances.  (Doc. 5-2 at 29-32 (Article VII, § 23).)

Of particular relevance to the allegations in Dobrski's Complaint, the Local CBA contains a section specifically dealing with the "Power Lockout Procedure." (Doc. 5-2 at 57.)  The procedure requires, among other things, that "[a]ny person who must work on powered equipment must cut off all sources of power and affix his safety locks in such a manner that power may not be turned on without removing the locks."  (*Id.*)

## 3. "Equal Application of Agreement"

Article X, Section 9 of the CBA provides that its terms shall apply "to all employees covered by the Agreement without discrimination, and in carrying out their respective obligations under this Agreement neither [the Company nor the Union] will discriminate against any employee on account of . . . age . . . [or] union activity."  (Doc. 5-2 at 36.)  This section further provides that the "grievance and arbitration procedure shall be the exclusive contractual procedure for remedying such discrimination claims."  (*Id.* at 37.)

## B. Procedural History and Jurisdiction

On April 27, 2009, Dobrski filed an eight (8) count complaint against Ford alleging the

4

following claims for relief:

- Count I: Wrongful Termination;

- Count II: Hostile Workplace;

- Count IV: Denial of Due Process;[3]

- Count V: Age Discrimination;

- Count VI: Retaliation;

- Count VII: Violation of the Duty of Good Faith and Fair Dealing;

- Count VIII: Intentional Infliction of Emotional Distress; and

- Count IX: Violation of § 301 of the Labor Management Relations Act.

(Doc. 1).

In his Complaint, Dobrski asserts that this Court has original jurisdiction over his due process claim pursuant to 28 U.S.C. § 1331.  (Doc. 1 at ¶ 2.)  Dobrski also asserts that the Court has diversity jurisdiction under 28 U.S.C. § 1332, because: (1) he is an Ohio citizen; (2) Ford is a Delaware corporation; and (3) the amount in controversy exceeds $75,000.  (*Id*. at ¶¶ 1, 3-5.)

It is well-established that, for diversity purposes, a corporation is deemed a citizen of any state in which it is incorporated and the state in which it has its principal place of business.  *See* 28 U.S.C. § 1332(c).  Although Dobrski's Complaint alleges that Ford is a Delaware corporation, it fails to allege where Ford's principal place of business is located.  By Order dated February 16, 2010, the Court directed Ford to identify its principal place of business.  (Doc. 12.)  On February 22, 2010, Ford submitted a response indicating that its principal place of business is in Michigan.  (Doc. 13.)

---

[3]In numbering the claims in his Complaint, Plaintiff mistakenly omitted a Claim III.  As a result, the Complaint states that there are nine (9) claims for relief when there are only eight (8). For ease of reference and to avoid confusion, rather than renumbering the claims, the Court will refer to the claims as labeled in the Complaint.

5

Accordingly, the Court has both federal question jurisdiction and diversity jurisdiction over the claims in Dobrski's Complaint.[4]

On June 26, 2009, Ford filed the instant Motion to Dismiss alleging that Plaintiff's Complaint fails to state a claim upon which relief can be granted and therefore should be dismissed in its entirety. (Doc. 5.) Dobrski filed a brief in opposition (Doc. 7), and Ford submitted a reply in support (Doc. 8.). Dobrski then attempted to file a sur-reply in opposition to Ford's Motion to Dismiss (Doc. 9), which Ford sought to strike on the basis that it was filed out of rule and attached two unauthenticated exhibits. (Doc. 10.) On September 17, 2009, the Court granted Ford's motion to strike Dobrski's sur-reply, indicating that, absent leave of Court, sur-replies are not authorized by the Court's local rules. Dobrski has not sought to amend his Complaint, either in response to Ford's motion detailing deficiencies in the Complaint, or otherwise.

## II.    STANDARD OF REVIEW

The Court may dismiss a claim for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). The purpose of a motion under 12(b)(6) is to test the sufficiency of the complaint – not to decide the merits of the case.

It is well-established that a complaint need not set forth in detail all of the particularities of the plaintiff's claim. *See Myers v. Delaware Co.*, No. 2:07-cv-844, 2009 U.S. Dist. LEXIS 98143, *6 (S.D. Ohio Oct. 22, 2009). Instead, Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 does not, however, "unlock the doors of discovery for a plaintiff armed with nothing more than

---

[4]As discussed below, however, several of Dobrski's claims fail due to his failure to exhaust the arbitration requirement in the CBA, and other claims fail to the extent they rely on his union activities because such claims are within the exclusive jurisdiction of the NLRB.

conclusions." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009).  While legal conclusions can provide the framework for a complaint, all claims must be supported by factual allegations.  *Id*.  The Supreme Court has indicated that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*. at 1949; *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)("[A] formulaic recitation of the elements of a cause of action" is insufficient).

To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must plead facts sufficient "to state a claim for relief that is <u>plausible</u> on its face."  *Twombly*, 550 U.S. at 570 (emphasis added).  The requisite facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S.Ct. at 1949.  The plausibility requirement is not the same as a "probability requirement" but instead "asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*.  Therefore, where a complaint pleads facts that are "merely consistent with" the defendant's liability, "its stops short of the line between possibility and plausibility of entitlement to relief."  *Id*. (citing *Twombly*, 550 U.S. at 557).  Examining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id*. at 1950.

A district court considering a motion to dismiss must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded allegations in the complaint as true.  *See Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998); *Iqbal*, 129 S.Ct. at 1950 ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.").  Where the well-pleaded facts "do not permit

the court to infer more than the mere possibility of misconduct," the complaint fails to state a claim. *Iqbal*, 129 S.Ct. at 1950. In sum, the allegations in the complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In ruling on a motion to dismiss, a court may consider: (1) any documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion to dismiss that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice. *Whittiker v. Deutsche Bank National Trust Co.*, 605 F.Supp.2d 914, 924-25 (N.D. Ohio 2009); *Ruth v. Unifund CCR Partners,* No. 5:08CV2689, 2009 U.S. Dist. LEXIS 17362, *11 (N.D. Ohio Mar. 6, 2009)("In determining whether to grant a Rule 12(b)(6) motion, the court 'may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to the defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.'"); *Greenberg v. Life Ins. Co.*, 177 F.3d 507, 514 (6th Cir. 1999); *see also* Fed.R.Civ.P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes.").

### III.   ANALYSIS

Ford seeks dismissal of Dobrski's Complaint in its entirety on several independent and sometimes overlapping grounds. First, Ford argues that some of Dobrski's claims, including Count I (wrongful termination), Count III (due process), and Count IV (age discrimination), fail, at least in part because Dobrski's employment with Ford, a non-public employer, was governed by the CBA. Second, Ford contends that other claims, including Count II (hostile workplace), Count V (retaliation), and Count IV (age discrimination), fail as a result of Dobrski's failure to satisfy certain

statutory prerequisites.  Third, Ford argues that, to the extent that several of Dobrski's claims rely, at least in part, on his allegations regarding his union activities, they are preempted by the National Labor Relations Act pursuant to *San Diego Building Trades v. Garmon*, 359 U.S. 236 (1959).  Ford also argues that Dobrski's state law claims are preempted by § 301 of the Labor Management Relations Act ("LMRA") because they are "inextricably intertwined with the CBA."  (Doc. 8 at 8.) Finally, Ford submits that, to the extent any of Dobrski's claims survive preemption, they nonetheless fail as a matter of law because they are unsupported by factual allegations.

The Court considers each of the claims in Dobrski's Complaint in turn.  For the reasons articulated below, the Court finds that dismissal pursuant to Rule 12(b)(6) is proper as to Counts I, II, IV, V, VII, VIII, and IX.  As to Dobrski's whistleblower retaliation claim (Count VI), Ford's Motion is denied to the extent he intends to rely upon O.R.C. § 4113.52(A)(3), and no other part of the Ohio Whistleblower Statute.

## A.    Count I: Wrongful Discharge

Dobrski asserts that he was terminated "unjustifiably, and without good cause."  (Doc. 1 at ¶ 23.)  Although it is unclear in the Complaint what legal theory Dobrski relies upon to support this claim, his briefing clarifies that he is asserting a claim for wrongful discharge in violation of public policy under Ohio law.  (Doc. 7 at 7.)  Specifically, Dobrski alleges he was terminated in violation of the public policies protected by O.R.C. § 4113.52 (Ohio's Whistleblower Statute) and § 4112 (prohibiting age discrimination).

In general, employment in Ohio is governed by the common law doctrine of employment at-will.  *Avery v. Joint Twp. Dist. Mem'l Hosp.*, 286 Fed. Appx. 256, 260 (6th Cir. 2008).  Pursuant to this doctrine, both the employer and the employee are free to terminate their employment

9

relationship at any time and for any reason.  *Id*.  Ohio law does, however, recognize a cause of action for wrongful discharge in violation of public policy as an exception to the at-will employment doctrine.  *Greeley v. Miami Valley Maintenance Contrs., Inc*., 551 N.E.2d 981 (Ohio 1990).[5]  In *Greeley*, the Ohio Supreme Court held that "public policy warrants an exception to the employment-at-will doctrine when an employee is discharged or disciplined for a reason which is prohibited by statute."  *Id*. at 986; *see also Painter v. Graley*, 639 N.E.2d 51, 56 (Ohio 1994)(holding that "an exception to the employment-at-will doctrine is justified where an employer has discharged his employee in contravention of a 'sufficiently clear public policy'").  In a subsequent decision, the Ohio Supreme Court clarified that only an at-will employee can assert a cause of action for wrongful discharge in violation of public policy.  *Haynes v. Zoological Society of Cincinnati*, 652 N.E.2d 948, 951 (Ohio 1995).

An employee "who is subject to a collective bargaining agreement that limits the employer's

_____

[5]To establish a claim for wrongful discharge in violation of public policy, a plaintiff must show:

1.  That [a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element).

2.  That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element).

3.  The plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element).

4.  The employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element).

*See Lawrence v. Dixon Ticonderoga Co.*, 305 F.Supp.2d 806, 811 (N.D. Ohio 2004)(citing *Himmel v. Ford Motor Co.*, 342 F.3d 593, 598 (6th Cir. 2003)).

10

power to terminate union members is not an employee-at-will and therefore falls outside the class of employees for whom *Greeley* provides protection." *York v. AK Steel Corp.*, No. C-1-04-250, 2005 U.S. Dist. LEXIS 31846, *23 (S.D. Ohio Dec. 8, 2005); *see also Haynes,* 652 N.E.2d at 951 (finding that the plaintiff could not bring a *Greeley* cause of action because she was a member of a union, and "the terms of her employment relationship were governed by a collective bargaining agreement"); *Klepsky v. United Parcel Serv., Inc.*, 489 F.3d 264, 270-71 (6th Cir. 2007)(finding that plaintiff, a union member, could not maintain a *Greeley* claim because he was not an employee at-will); *Bradshaw v. Goodyear Tire and Rubber Co.*, 485 F.Supp.2d 821, 830 (N.D. Ohio 2007)(declining to extend the public policy tort where plaintiff's employment was governed by a union-backed CBA).

Ford argues that Dobrski fails to state a claim for wrongful discharge in violation of public policy because his employment was subject to the CBA.  In response, Dobrski concedes he is a union member whose employment was governed by a CBA and even affirmatively asserts that Ford's right to terminate him was limited by the terms of the CBA.  He asserts, however, that Ohio law *permits* wrongful discharge claims even where there is a CBA.  He cites no authority for this proposition, however, and it is clear he is wrong; since Dobrski was not an at-will employee, he may not assert a claim for wrongful discharge in violation of Ohio law.  *See Giles v. Univ. of Toledo*, 286 Fed. Appx. 295, 306 (6th Cir. 2008)(finding that because the plaintiff was subject to a collective bargaining agreement, he was not an at-will employee and therefore could not assert a claim for wrongful discharge in violation of public policy).[6]

---

[6]While Dobrski cites *Tackett v. Ohio Dept. of Rehab. and Corr.*, No. 2006-06604, 2008-Ohio-3410 (Ohio Ct. Cl. June 18, 2008), *Tackett* simply did not address the issue.

Dobrski next argues that, even though his employment was governed by the CBA, his union representatives did not adequately represent him in connection with his discharge. The union's conduct, no matter how inadequate, cannot change the fact that Dobrski was not an at-will employee, however. Given that fact, he simply cannot assert a claim that only exists as an exception to the employment at-will doctrine.

Accordingly, Dobrski's attempt to assert a claim for violation of public policy based on his alleged wrongful discharge fails as a matter of law, and Count I must be **DISMISSED**.[7]

### B.      Count IV: Due Process

In Count four of his Complaint, Dobrski asserts a due process claim alleging that his termination deprived him of: (1) a property interest in continued employment with Ford in violation of the Fifth and Fourteenth Amendments to the United States Constitution; and (2) a liberty interest in running for elected union office. (Doc. 1 at ¶¶ 29-36.) Ford argues that Dobrski's due process claims fail as a matter of law because such claims are not available to an employee of a private employer where no state action is alleged. (Doc. 5-1 at 12.) Ford further argues that Dobrski has not alleged deprivation of a "fundamental right" necessary to assert a substantive due process claim. (*Id.*) The Court finds Ford's arguments well-taken.

It is well-established that "before a litigant may pursue a claim that he has been deprived of

---

[7]In its Motion to Dismiss, Ford notes that Claim I of the Complaint could be interpreted to include a claim for breach of implied contract. (Doc. 5-1 at 21.) Although Dobrski's briefing does not address this issue, the Court finds that, to the extent Claim I seeks to assert a claim for breach of implied contract, such a claim fails as a matter of law because Dobrski's employment was governed by an express contract – the CBA. Ohio courts have consistently found that "an express contract and an implied contract cannot coexist with reference to the same subject matter." *Harris v. Greater Cleveland Regional Transit Authority*, No. 89541, 2008-Ohio-676, 2008 Ohio App. LEXIS 591, ¶ 14 (internal citation omitted). Because Dobrski was subject to the terms of the CBA, which provides that Ford can discharge employees for "just cause" and provides a grievance procedure, Dobrski's implied contract claim fails as a matter of law.

a constitutional right – including the right to due process of law – he must first establish that the challenged conduct constituted 'state action.'" *United States v. Int'l Bhd. of Teamsters*, 156 F.3d 354, 359 (2d Cir. 1998). The allegedly improper conduct must be "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible, and the party charged with the conduct must be a person who may fairly be said to be a state actor." *Id*. (internal citation omitted).

A property interest protected by the Due Process Clause exists where the plaintiff has a "legitimate claim of entitlement" to continued employment, and the claim was created by "existing rules of understandings that stem from an independent source such as state law." *Dohner v. Neff*, 240 F.Supp.2d 692, 702 (N.D. Ohio 2002)(quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). Collective bargaining agreements are "substantially different from a property interest in employment which is conferred by a state or federal legislature." *Int'l Union, United Auto. Aero. & Agric. Implement Workers of Am. v. Auto Glass Employees Fed. Credit Union*, 858 F.Supp. 711, 720 (M.D. Tenn. 1994). Indeed, collective bargaining agreements, which govern the relationship between a private employer and its employees, are simply "incapable of conferring any constitutional property or due process right" upon employees. *Id*.

Similarly, substantive due process "reaches only those employment decisions affecting constitutionally protected 'fundamental rights' of an employee, such as the rights protected under the Bill of Rights." *Dohner*, 240 F.Supp.2d at 703. Where an employee's interest in his job is based on a collective bargaining agreement, rather than the Constitution or Bill of Rights, he has not alleged deprivation of a "fundamental right" and therefore cannot prevail on a substantive due process claim. *Id*.

13

Dobrski has not, and cannot, allege that Ford is a state actor or that its conduct can be characterized as state action. Because Ford is not a state actor, its actions cannot implicate constitutional due process requirements. Because Dobrski's employment was governed by the CBA, moreover, which cannot confer a constitutional property or due process right upon employees, he has not alleged deprivation of a "fundamental right" and therefore cannot assert a substantive due process claim. *See Dohner*, 240 F.Supp.2d at 703. Accordingly, Count IV is **DISMISSED**.[8]

### C.      Counts II and VI: Hostile Workplace and Retaliation

Although Dobrski's Complaint cites no statute under which he asserts his hostile workplace and retaliation claims arise, in his Brief in Opposition to the Motion to Dismiss, Dobrski clarifies that these claims are brought pursuant to Ohio law. Specifically, in his briefing, Dobrski groups his hostile workplace and retaliation claims together, and argues that he was treated "with hostility as a result of his safety concerns, and ultimately retaliated against" because of those concerns, in violation of the Ohio Whistleblower Statute, O.R.C. § 4113.52. (Doc. 7 at 10.)[9] In addition, Dobrski alleges that he was motivated to run for elected union office due to his concern for safety procedures at Ford's facility. (*Id.* at 9.)

Ford argues that these claims fail as a matter of law because: (1) Dobrski fails to allege that the specific statutory requirements of Ohio's Whistleblower Statute were met; and (2) to the extent

---

[8]In light of the Court's conclusion that, as an employee of a private employer, Dobrski cannot assert a due process claim, the Court need not address Ford's alternative argument that Dobrski's due process claims are preempted by the NLRA because they relate, at least in part, to his union activities.

[9]Although Dobrski blends his hostile workplace (Count II) and retaliation (Count VI) claims to form the basis of his Ohio Whistleblower claim, his briefing characterizes the whistleblower claim solely in retaliation terms. It appears, therefore, that Dobrski has abandoned what he originally characterized as a "hostile workplace" claim.

Dobrski is alleging that he was retaliated against due to his union activities, that claim is preempted by the National Labor Relations Act ("NLRA").  The Court finds the latter argument well-taken, but finds that dismissal of Dobrski's whistleblower retaliation claim (Count VI) in its entirety would be premature at this stage of the proceedings.

### 1.  The Ohio Whistleblower Statute

Ohio's Whistleblower Statute, O.R.C. § 4113.52, prohibits an employer from taking any retaliatory or disciplinary action against an employee who reports an employer's or a co-worker's wrongdoing.  *Avery*, 286 Fed. Appx. at 261.  To prove a claim under § 4113.52, a plaintiff must show that: (1) he is entitled to protection under the act; (2) he was subject to an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action.  *See Klepsky v. United Postal Service, Inc*., No. 04CV1683, 2005 U.S. Dist. LEXIS 21395, *11 (N.D. Ohio Sept. 27, 2005)(citing *Chandler v. Empire Chem*., 650 N.E.2d 950, 953 (Ohio 1994)).  Accordingly, the Court must decide, as an initial matter, whether Dobrski is entitled to protection under the Whistleblower Statute.

O.R.C. § 4113.52 sets forth three circumstances in which an employee is protected for whistleblowing activity:  Section (A)(1) addresses reports of violations of law "that the employee's employer has authority to correct;" Section (A)(2) deals with the reporting of criminal violations of the State's environmental laws; and Section (A)(3) addresses an employee's complaints of "violations by a fellow employee."

Dobrski's Complaint does not identify on which of these prongs of the Whistleblower Statute he relies.  It is clear from his briefing, however, that Dobrski does not rely on Section (A)(2) because

his claims do not appear to involve any of the matters within the scope of that section.[10]

Accordingly, the Court will address whether Dobrski can maintain a cause of action under O.R.C. § 4113.52(A)(1)(a) or § 4113.52(A)(3).  As discussed below, the Court finds that Dobrski arguably can assert a whistleblower claim under Section (A)(3) of the statute.[11]

### a.      O.R.C. § 4113.52(A)(1)(a)

O.R.C. § 4113.52(A)(1)(a) applies when an employee, during the course of his employment, becomes aware of a legal violation that the "employer has authority to correct."  *See* O.R.C. § 4113.52(A)(1)(a).  The employee must have a reasonable belief that the violation is either a felony

---

[10]O.R.C. § 4113.52(A)(2) "addresses the situation where an employee becomes aware in the course of his or her employment of a violation of R.C. Chapter 3704 (Air Pollution Control Act), 3734 (Solid and Hazardous Wastes Act), 6109 (Safe Drinking Water Act), or 6111 (Water Pollution Control Act) that is a criminal offense."  *Poluse v. Youngstown*, 735 N.E.2d 505, 510 (Ohio Ct. App. 1999)(quoting *Kulch v. Structural Fibers, Inc.*, 677 N.E.2d 308 (Ohio 1997)).  Under those circumstances, "the employee directly may notify, either orally or in writing, any appropriate public official or agency that has regulatory authority over the employer and the industry, trade, or business in which the employer is engaged."  O.R.C. § 4113.52(A)(2).  Because Dobrski does not allege, either in his Complaint or his briefing, any violation of the specific environmental laws contemplated in Section (A)(2), the Court need not address whether he complied with the specific procedures relevant to that prong of the Whistleblower Statute.

[11]The Court expresses no opinion on whether, even if he could assert a claim under Ohio's Whistleblower Statute, that claim would nevertheless be preempted by Section 301 of the LMRA.  There is unpublished case law in the Sixth Circuit concluding that, when a cause of action for retaliation arises under the Ohio Whistleblower Statute, and does not require resort to the collective bargaining agreement, it is not preempted.  *Pearsall v. Chrysler Corp.*, No. 94-3775, 1996 U.S. App. LEXIS 2794, *26-27 (6th Cir. Feb. 2, 1996)("The Ohio statute prohibits an employer from taking any disciplinary action or making any reassignment for a retaliatory reason, regardless of whether the action or reassignment falls within the collective bargaining agreement authority of the employer.  Therefore, if the employer disciplines or reassigns an employee in retaliation for the employee's whistleblowing, it is unnecessary to resort to the labor contract to see whether the discipline or reassignment itself was within the ambit of Management's contractual rights.").  Here, the CBA provisions governing health and safety differ substantially from those at issue in *Pearsall*, however, so it is unclear what result might be compelled by a preemption analysis in this case.  The parties do not brief this issue and the Court does not address it.

16

or "a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety." *Id*.

Under those circumstances, the employee is required to "orally notify his or her supervisor or other responsible officer of the employer of the violation *and* subsequently file with that person a written report that provides sufficient detail to identify and describe the violation." *Contreras v. Ferro Corp*., 652 N.E.2d 940, 943 (Ohio 1995)(emphasis in original).  If the employee satisfies these requirements, and the employer fails to correct the violation or to make a good faith effort to correct the violation within twenty-four hours after the oral notification or the receipt of written notice, whichever is earlier, the employee can then file a written report with outside authorities.  *Id*.; *See* O.R.C. § 4113.52(A)(1)(a).  Failure to strictly comply with these statutory requirements "prevents the employee from claiming the protections embodied in the statute."  *Contreras,* 652 N.E.2d at syllabus; *see also Klepsky*, 2005 U.S. Dist. LEXIS 21395 at *12-13 (same).

In *Klepsky*, the court found that an employee was not entitled to protection under Ohio's Whistleblower Statute where his status as a whistleblower was "alleged to have stemmed from his alleged safety complaints."  *Id*. at *15.  Specifically, the court noted that the employee's claim for protection failed because he: (1) failed to provide the required notice prior to filing a complaint with outside authorities; and (2) did not claim that he possessed a reasonable belief that the safety issues he complained about involved either a felony or a violation of criminal law.  *Id*. at *14-15.  As a result, the employee did not qualify as a protected whistleblower.  *Id*. at *16-17.

Dobrski alleges that he was terminated in part "because of his concern for safety procedures at the Defendant's facility, and specifically the Defendant's 'lock out' procedures." (Doc. 1 at ¶ 43.) In his briefing, Dobrski alleges that he: (1) "continually lodged oral complaints with the Defendant regarding his safety concerns, and also filed written complaints complaining of the same;" and (2)

17

is a protected whistleblower under O.R.C. § 4113.52.  (Doc. 7 at 9-10.)  In support of these assertions, Dobrski attaches a document entitled "Harassment Complaint Report."  Based on his briefing, therefore, it would appear that he can satisfy the first two requirements for a cause of action under O.R.C. § 4113.52(A)(1)(a): he brought safety concerns to the attention of his supervisors both orally and in writing.  Dobrski has not alleged, however, that he had "any reasonable belief that the safety issues he complained about involved any violation of criminal law, as required by the statute." *See Klepsky*, 2005 U.S. Dist. LEXIS 21395 at *15.  Nor has he alleged that he ever "blew the whistle" on Ford to any outside authorities.  In other words, Dobrski's allegations, even as expanded by his briefing, are inadequate; he has not alleged that he has satisfied the prerequisites to protection under Section (A)(1) of the Whistleblower Statute.

The Court finds, accordingly, that, to the extent Count VI seeks to assert a claim under O.R.C. § 4113.52(A)(1)(a), it fails as a matter of law because Dobrski has not alleged facts sufficient to show that he is entitled to protection under that prong of the act.

### b.    O.R.C. § 4113.52(A)(3)

Although he does not specifically invoke it in his Complaint, based on his briefing and the "Harassment Complaint Report" attached thereto, it appears that Dobrski may be able to assert a cause of action under O.R.C. § 4113.52(A)(3).  This section of the Whistleblower Statute provides an employee protection from employer retaliation when the employee reports a co-worker's violation of a state or federal statute, a work rule, or a company policy.  *Fox v. Bowling Green*, 668 N.E.2d 898, 901 (Ohio 1996).  Specifically, O.R.C. § 4113.52(A)(3) provides:

> If an employee becomes aware in the course of the employee's employment of a violation by a fellow employee of any state or federal statute, any ordinance or regulation of a political subdivision, or any work rule or company policy of the employee's employer and the employee reasonably believes that the violation is a criminal offense that is likely to cause an imminent risk of physical harm to persons

18

or a hazard to public health or safety, a felony, or an improper solicitation for a contribution, the employee orally shall notify the employee's supervisor or other responsible officer of the employee's employer of the violation and subsequently shall file with that supervisor or officer a written report that provides sufficient detail to identify and describe the violation.

To comply with Section (A)(3), an employee must: (1) orally notify his supervisor or other responsible officer of the co-worker's alleged violation; (2) follow up with a written report providing sufficient detail to identify the alleged violation; and (3) reasonably believe that the violation was a felony or a "a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety." *See* O.R.C. § 4113.52(A)(3).  The Ohio Supreme Court has held that, to obtain protection under Section (A)(3), "an employee need not show that a co-worker had actually violated a statute, city ordinance, work rule, or company policy; it is sufficient that the employee had a reasonable belief that a violation occurred." *Fox*, 668 N.E.2d at 901.

Dobrski's Complaint neither identifies any co-workers nor attributes his safety complaints to any specific co-workers.  In the "Harassment Complaint Report" attached to his responsive briefing, however, Dobrski states that a co-worker named Leslie Stuck told him that he "locks out" too much and therefore cannot work on Sundays.  (*See* Doc. 7-1.)  More specifically, Dobrski complains that, because he complies with appropriate safety protocols (which apparently delays the manufacturing process), Stuck refused to allow him to work on weekends, opting instead to put less safe employees on the schedule.  Although Dobrski asserts that he orally notified Ford and filed written reports relating to these safety concerns, he does not allege he reasonably believed these alleged violations of Ford's safety protocol constituted criminal violations.  As a result, it is unclear whether Dobrski is entitled to protection from retaliation under O.R.C. § 4113.52(A)(3).  Given the stage in the proceedings, and in an abundance of caution, the Court grants Dobrski fourteen (14) days from the date of this Order to amend his whistleblower retaliation claim (Count VI) to assert a cause

19

of action under Section (A)(3) of the Statute, if he can do so in good faith.[12]

### 2. NLRA Preemption

Dobrski contends that Ford retaliated against him and ultimately terminated him at least in part "because he ran for elected union office." (Doc. 1 at ¶ 42.) Ford argues that, because this allegation deals with Dobrski's involvement in union activities, it is preempted by the NLRA pursuant to *San Diego Building Trades v. Garmon*, 359 U.S. 236 (1959).

In *Garmon*, the Supreme Court indicated that, "[w]hen an activity is arguably subject to § 7 or § 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." *Id*. at 245. The party invoking *Garmon* preemption bears the burden of showing that the conduct at issue is prohibited or protected by the NLRA. *Northwestern Ohio Adm'rs, Inc. v. Walcher & Fox, Inc.*, 270 F.3d 1018, 1027 (6th Cir. 2001).

The Supreme Court has refused to apply *Garmon* in a mechanical fashion and instead uses a flexible balancing approach to determine whether conduct that is regulated by the NLRA should nonetheless be subject to state control. *Id*.; *see also Sears, Roebuck & Co. v. San Diego Cty. Dist. Council of Carpenters*, 436 U.S. 180, 188 (1978)("[T]he Court has refused to apply the *Garmon* guidelines in a literal, mechanical fashion."). A state cause of action is not preempted if the issue involved only peripherally concerns federal law or touches deeply rooted state or local interests. *Northwestern Ohio Adm'rs*, 270 F.3d at 1027.

The Sixth Circuit instructs courts to consider two factors in determining whether a state claim

---

[12]It may be that Dobrski cannot state a cause of action for whistleblower retaliation, particularly since he did not seek leave to amend his Complaint after Ford's Motion to Dismiss pointed out the inadequacies in it. If he cannot, in good faith, amend, this sole remaining claim will be dismissed and the action terminated.

is preempted by the NLRA: (1) whether there is a "significant" state interest in protecting its citizens from the conduct; and (2) whether the state claim is identical to a claim that could have been raised with the NLRB. *Id*. (citing *Sears*, 436 U.S. at 196). With respect to the second factor, if the state law claim is identical to a potential claim to the NLRB, then the NLRB has exclusive jurisdiction "because the state regulation impinges directly on the Board's prerogative to fashion a uniform labor policy." *Id*. at 1027-28. For purposes of the preemption inquiry, courts must focus on the nature of the conduct giving rise to the plaintiff's claims rather than the descriptive title given to the particular cause of action. *Ackers v. Celestica Corp*., No. C2-06-496, 2007 U.S. Dist. LEXIS 24400, *18 (S.D. Ohio March 21, 2007).

The threshold issue in this case is whether Dobrski's actions are of the type that Section 7 of the NLRA was designed to protect. Section 7 confirms the right of employees "to form, join, or assist labor organizations." *See* 29 U.S.C. § 157. Section 8 of the NLRA provides, in part, that "[i]t shall be an unfair labor practice for an employer – (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7 [29 U.S.C. § 157]." *See* 29 U.S.C. § 158(a)(1).

Section 7 has been broadly interpreted by the NLRB, and courts have found that an employee's activities are protected by Section 7 "if they might reasonably be expected to affect terms or conditions of employment." *See Office and Professional Employees Int'l Union v. NLRB*, 981 F.2d 76, 81 (2d Cir. 1992)(citing *Brown & Root, Inc v. NLRB*, 634 F.2d 816, 818 (5th Cir. 1981)). In "the case of an employee running for office in his or her own bargaining representative, the connection between the activity and the terms and conditions of employment is clear. An employee may not be disciplined by her employer for seeking to participate in the internal affairs of her union." *Id*. at 82 (citing *Barton Brands*, 298 N.L.R.B. 976, 980 (1990)). Because running for union office is a fundamental right protected by Section 7, an employer's interference with this right violates

21

Section 8(a)(1), which prohibits employers from disciplining or discharging employees for their participation in union activities. *See id*. at 80, n.1 (noting that Section 8(a)(1) "serves to prohibit employers from firing or otherwise disciplining employees for their involvement in union activities"). In other words, an employer cannot discipline or discharge an employee for running for elected union office within his own local union. *Id*. at 84 (noting that the NLRA "prevents employers from disciplining employees for activities within their own bargaining agent but does not prevent them from firing workers involved in the bargaining agent for someone else's employees").

Dobrski alleges that he was terminated at least in part in retaliation for his decision to run for vice president of the Local 420 union. (*See* Doc. 1 at ¶ 42; Doc. 7 at 9.)  The connection between Dobrski's decision to run for union office and the terms and conditions of his employment is clear – particularly in light of Dobrski's own indication that he was motivated to run for union office because of his concern for safety procedures at Ford's facility.  Despite these allegations, in his briefing, Dobrski seeks to downplay the alleged role his union activities played in his termination, presumably in an effort to avoid NLRA preemption.  For example, he states that "the motivations for the Defendant's wrongful termination of Mr. Dobrski were not wholly or necessarily the result of Mr. Dobrski's union activities." (Doc. 7 at 13.)[13]  Nevertheless, the Court finds that, to the extent Dobrski's retaliation claim purports to stem from his union activities, it is preempted under *Garmon* because the conduct at issue – running for union office – is protected activity under § 7 of the NLRA. *See Office and Professional Employees Int'l Union,* 981 F.2d at 82.

While it is clear that the State of Ohio has a significant interest in protecting its citizens from

------

[13]It appears Dobrski may be disclaiming any retaliation claim premised on union activity. Whether because he has withdrawn it, or because, as the Court concludes, it is preempted, it must be dismissed.

22

retaliation in the workplace, Dobrski's retaliation claim based on the protected activity of running for union office is identical to a § 7 and § 8 claim that could have been filed with the NLRB.  *See Northwestern Ohio Adm'rs*, 270 F.3d at 1027-28 (noting that if a state law claim is identical to that which could have been raised to the NLRB, the NLRB has exclusive jurisdiction over the matter).  As a result, to the extent Dobrski's retaliation claim is based on his union activities, it is subject to the exclusive jurisdiction of the NLRB, and is preempted pursuant to *Garmon*.

For these reasons, Counts II and VI are **DISMISSED** to the extent they are premised on Dobrski's union activity.

### D.    Count V: Age Discrimination[14]

Ford argues that Dobrski's age discrimination claim fails as a matter of law because he had the opportunity to arbitrate his discharge through the Grievance Procedure set forth in the CBA between Ford and the UAW.  Ford further argues that Dobrski has failed to allege a *prima facie* case for age discrimination.  In response, Dobrski alleges that he has satisfied all of the elements required for an age discrimination claim, and that, although the CBA contains a Grievance Procedure, he did not have an opportunity to arbitrate his wrongful discharge claim because the Union did not adequately represent him in that process.  Dobrski further asserts that O.R.C. § 4112.14(C) does not prohibit his claim because his discharge was not arbitrated and found to be for just cause.

While it appears that Dobrski has not alleged certain critical elements of a sustainable age

---

[14]While the Complaint does not specify whether Dobrski is alleging age discrimination in violation of federal or state law, his briefing in response to Ford's Motion to Dismiss clarifies that his age discrimination claim is based exclusively on Ohio state law.  (Doc. 7 at 11-12.)  Age discrimination claims under Ohio law are generally analyzed under the same standards as federal claims under the Age Discrimination in Employment Act.  *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 357 (6th Cir. 1998); *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1115 (6th Cir. 2001).

discrimination claim, even if he had, his claim must be dismissed because of his failure to arbitrate it. Section 4112.02(A) of the Ohio Revised Code prohibits an employer from discharging an employee without just cause on the basis of age. O.R.C. § 4112.14(C) provides that a cause of action for age discrimination "shall not be available in the case of discharges where the employee has available to the employee the opportunity to arbitrate the discharge or where the discharge has been arbitrated and has been found to be for just cause." The only exception to § 4112.14(C) is:

> when the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation. In such an instance, an employee may bring suit against both the employer and the union, notwithstanding the outcome or finality of the grievance or arbitration proceeding.

*Proffitt v. AK Steel Corp.*, No. C-1-03-471, 2006 U.S. Dist. LEXIS 5361, *38 (S.D. Ohio Jan. 25, 2006)(citing *Sutterlin v. Mansfield Plumbing*, No. 00COA0139, 2001 Ohio Ap. LEXIS 1466, *5-6 (Ohio Ct. App. March 26, 2001)).

Where a plaintiff has an opportunity to arbitrate under the terms of a collective bargaining agreement, but fails to do so, he is unable to pursue a claim for age discrimination under § 4112.14. *York v. AK Steel Corp.*, No. C-1-04-250, 2005 U.S. Dist. LEXIS 31846, *21 (S.D. Ohio Dec. 8, 2005)(finding employees have an opportunity to arbitrate when arbitration is provided under a CBA); *Blair v. Lucent Technologies, Inc.*, No. C2-06-450, 2007 U.S. Dist. LEXIS 19555, *13 (S.D. Ohio March 20, 2007)("If arbitration was available, and Plaintiffs did not avail themselves of it, then the statute would bar their claim of age discrimination."). An "opportunity to arbitrate" exists where the plaintiff "had access to an arbitration procedure." *Cramton v. Siemens Energy & Automation, Inc.*, No. C-1-08-579, 2009 U.S. Dist. LEXIS 74850, *13 (S.D. Ohio Aug. 17, 2009)(internal citation omitted). In *Cramton*, the plaintiff alleged that, although the CBA at issue contained an arbitration

24

provision, he did not have an opportunity to arbitrate because the union "refused to arbitrate his discharge." *Id*. at *13-14. The court found that the union's refusal to arbitrate did not "negate the fact that the opportunity to arbitrate was available." *Id*. at *14. The court further noted that, a where a plaintiff asserts "discriminatory, dishonest, arbitrary, or perfunctory" conduct on the part of the union representing him, he can bring suit against both his employer and the union. *Id*. The court found that, because the plaintiff failed to assert a breach of duty claim against the union, the plaintiff's age discrimination claim was prohibited. *Id*. (citing *Sutterlin,* 2001 Ohio Ap. LEXIS 1466, at *5-6).

In a recent 2009 decision, the Ohio Supreme Court recognized that a grievance procedure can be the "functional equivalent" of arbitration for O.R.C. § 4112.14(C) purposes. *Meyer v. United Parcel Service, Inc.*, 909 N.E.2d 106, 116-17 (Ohio 2009)(accepting the court of appeals' holding that the UPS grievance procedure was the equivalent of arbitration and finding that the plaintiff's age discrimination claim was barred pursuant to O.R.C. § 4112.14(C)). Courts in other jurisdictions similarly have found that, where a collective bargaining agreement provides a multi-level grievance procedure which includes a "bipartite committee grievance resolution" procedure, such a procedure is equivalent to arbitration. *Hammontree v. National Labor Relations Board*, 925 F.2d 1486, 1490 n.7 (D.D.C. 1991).

In this case, it is undisputed that the CBA governing Dobrski's employment contains a multi-stage Grievance Procedure, which culminates in proceedings in front of an impartial Umpire. (*See* Doc. 5-2 at 27 (Article VII, § 13(b)("The Umpire will hold hearings open to the parties and may examine the witnesses of each party and each party shall have the right to cross-examine all

witnesses produced and to make a record of all such decisions.")).[15]  In addition, as previously discussed, Article X, Section 9 of the CBA provides that the "grievance and arbitration procedure shall be the exclusive contractual procedure for remedying" discrimination claims.  (*Id.* at 37.)  The CBA further provides that the Umpire "shall be empowered . . . after due investigation, to make a decision in cases of alleged violations of the terms of this Agreement or written local or regional agreements supplementary thereto, of grievances expressly subject to the Grievance Procedure." (*Id.* at 28, Article VII, § 16(a)).

In the Complaint, Dobrski alleges that he filed a grievance regarding his termination and that the UAW "failed to fairly represent him," but provides no information regarding the stage to which his grievance progressed.  Instead, Dobrski makes the conclusory statement in his briefing that his discharge was never arbitrated, but does not explain why except to assert vaguely that the Union did not do enough for him.  Because Dobrski had an opportunity to arbitrate his discharge but failed to do so, and further failed to assert a claim for breach of duty against the UAW in this case, his age discrimination claim is barred by the arbitration exhaustion requirement set forth in O.R.C. § 4112.14(C).  Accordingly, Count V is **DISMISSED**.[16]

### E.    Preemption Under Section 301 of the LMRA

Ford moves to dismiss Dobrski's state law claims for violation of the duty of good faith and

---

[15]Dobrski does not dispute that the Grievance Procedure provided in the CBA constitutes "arbitration" within the meaning of O.R.C. § 4112.14(C).  Indeed, in his briefing, Dobrski states that he "has not had the opportunity to properly arbitrate the discharge, as provided in the collective bargaining agreement."  (Doc. 7 at 12.)  Therefore, references to "arbitration" herein should be read to include the Grievance Procedure set forth in the CBA.

[16]In light of the Court's conclusion that Dobrski's age discrimination claim is barred by O.R.C. § 4112.14(C), the Court need not address Ford's additional argument that Dobrski's Complaint does not allege certain critical elements to support a claim of age discrimination.

fair dealing (Count VII) and intentional infliction of emotional distress (Count VIII) on grounds that they are preempted by § 301 of the LMRA because they are "inextricably intertwined with the CBA." (Doc. 8 at 8.)[17] Alternatively, Ford submits that, to the extent these claims survive preemption, they nonetheless fail as a matter of law.

Section 301 of the LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). Section 301 preemption is broad; it preempts all state law claims that arise from, and are substantially dependent upon, an interpretation of the underlying collective bargaining agreement. *Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 213 (1985); *Mattis v. Massman*, 355 F.3d 902, 905 (6th Cir. 2004); *see also Northwestern Ohio Adm'rs,* 270 F.3d at 1030 (stating that "[a]lthough section 301 has broad preemptive effect . . . [it] is by no means boundless" and does not preempt claims "that only tangentially involve CBA provisions")(internal citation omitted). And, it applies to both state law contract and tort claims. *Mattis,* 355 F.3d at 905 (*citing Smolarek v. Chrysler Corp.*, 879 F.2d 1326, 1329-30 (6th Cir. 1989)). The purpose of this preemption is to ensure uniformity and to "prevent inconsistent interpretations of the substantive provisions of collective bargaining agreements." *Smolarek*, 879 F.2d at 1329.

The Sixth Circuit dictates use of a two-part test to determine whether a state law claim is sufficiently independent to survive § 301 preemption. *DeCoe v. General Motors Corp.*, 32 F.3d 212,

---

[17]Ford also seeks dismissal of what it perceives as a quasi-contractual claim in Count I on preemption grounds. As previously indicated, to the extent that Count I seeks to assert a quasi-contractual claim – which Dobrski does not address – that claim fails as a matter of law because Dobrski's employment was governed by an express contract – the CBA. Accordingly, with respect to Count I, the Court need not address Ford's alternative § 301 preemption argument.

216-17 (6th Cir. 1994).  First, the court must determine whether proof of the state law claim requires interpretation of the terms of a governing collective bargaining agreement.  *Id*. at 216.  If the answer is yes, then the claim is preempted.  *Mattis*, 355 F.3d at 906.  Second, the court must determine whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law.  *DeCoe,* 32 F.3d at 216.  If the right is created by the collective bargaining agreement, then the claim is preempted.  *Mattis*, 355 F.3d at 906.  In other words, if the claim fails either prong of the two-part test, it is preempted under § 301.  *Id*.

### 1.  Count VII: Violation of the Duty of Good Faith and Fair Dealing

Dobrski's seventh claim for relief purports to state a claim for breach of the duty of good faith and fair dealing.  Specifically, Dobrski's Complaint makes the conclusory allegation that Ford's actions and conduct constitute a breach of the duty of good faith and fair dealing and that as a result, Dobrski has suffered damages.  (Doc. 1 at ¶¶ 46-47.)

Ford argues that Count VII is preempted by § 301 of the LMRA because the "only contract in dispute that Ford could have breached and that could impose a 'duty of good faith and fair dealing' is the collective bargaining agreement."  (Doc. 5-1 at 21.)  Accordingly, Ford argues, this claim arises from the CBA and must be resolved by reference to federal labor law.  (*Id*.).  In the alternative, Ford contends that, even if this claim is not preempted, it nevertheless fails as a matter of law because "Ohio law does not permit implied covenants in a contract in relation to any matter specifically covered by the written terms."  (Doc. 5-1 at 23.)  In response, Dobrski simply states, without any supporting authority, that his claim for violation of good faith and fair dealing does not require interpretation of the CBA and therefore is not preempted.  (Doc. 7 at 14.)

In Ohio, every contract includes an implied good faith and fair dealing requirement.  *See Littlejohn v. Parrish*, 839 N.E.2d 49, 53 (Ohio 2005) (noting that "the standard of good faith is

required of every contract, including employment contracts").  Ohio law does not, however, recognize a separate tort for breach of the duty of good faith and fair dealing.  *Barron v. Vision Service Plan*, 575 F.Supp.2d 825, 835 (N.D. Ohio 2008)(citing *Littlejohn*, 839 N.E.2d at 53). Indeed, the duty to act in "good faith" cannot stand alone as a separate cause of action independent from the underlying breach of contract claim.  *Eggert Agency, Inc. v. NA Mgmt. Corp*., No. C2-07-1011, 2008 U.S. Dist. LEXIS 90830, *10 (S.D. Ohio Aug. 12, 2008)(citing *Lakota Local Sch. Dist. Bd. of Educ. v. Brickner*, 671 N.E.2d 578 (1996)); *see also Krukrubo v. Fifth Third Bank*, No. 07AP-270, 2007-Ohio-7007, 2007 Ohio App. LEXIS 6140, *12 (Ohio Ct. App. Dec. 27, 2007)("[A]n allegation of a breach of the implied covenant of good faith cannot stand alone as a separate cause of action from a breach of contract claim.").

Claims for breach of the implied covenant of good faith and fair dealing are preempted by § 301 of the LMRA where the only contract that governs the relationship between the parties is a CBA.  *See Salisbury v. Thermatex Corp*., 704 F.Supp. 778, 781 (N.D. Ohio 1988).  In *Salisbury*, as here, the only contract at issue was the collective bargaining agreement between the employer and the union.  *Id*.  As such, the Court concluded that the employee's claim for breach of the implied covenant of good faith and fair dealing necessarily arose from a labor contract, and, thus, had to be resolved by reference to federal labor law. *Id*.

Here too, the only contracts at issue are: (1) the CBA between Ford and the UAW; and (2) the Local CBA between UAW Local 420 and the Ford Walton Hills Stamping Plant.  As a result, the only contracts that Ford could have breached, and that could impose a duty of good faith and fair dealing, are the CBA and the Local CBA.  The CBA authorized Ford to discipline and discharge Dobrski for just cause and therefore governs whether Dobrski has any claim based on his termination.  Accordingly, Count VII is preempted by § 301, and must be **DISMISSED**.

### 2. Count VIII: Intentional Infliction of Emotional Distress

Ford argues that Dobrski's claim for intentional infliction of emotional distress is preempted by § 301 to the extent it relies on conduct Ford was authorized to take under the CBA.[18]  For example, Ford argues that Dobrski's claims "rise and fall" on his assertion that he was harassed and ultimately terminated due to his concern for company safety procedures.  Because the CBA contains extensive provisions regarding Ford's safety procedures, Ford argues that any discipline or discharge based on those procedures, or an employee's complaints about them, requires an interpretation of the CBA.  (Doc. 5-1 at 22-23.)  In response, Dobrski makes a conclusory statement that his emotional distress claim does not require interpretation of the CBA, and therefore is not preempted.  (Doc. 7 at 14.)  Notably, this statement is the only time Dobrski mentions his emotional distress claim in his responsive briefing.

Under Ohio law, a plaintiff asserting a claim for intentional infliction of emotional distress must prove that: (1) the defendant intended to cause serious emotional distress to the plaintiff; (2) the defendant's conduct was "extreme and outrageous;" and (3) the defendant's conduct proximately caused the plaintiff's serious emotional distress.  *Fitzgerald v. Roadway Express, Inc.*, 262 F.Supp.2d 849, 857-58 (N.D. Ohio 2003)(citing *Phung v. Waste Management, Inc.*, 644 N.E.2d 286, 289 (Ohio 1994)).  A plaintiff can establish intentional infliction of emotional distress only if "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible

---

[18]Ford also argues that Dobrski's intentional infliction of emotional distress claim is preempted by the NLRA.  To the extent Dobrski alleges he suffered emotional distress because he was harassed for running for union office, Ford is correct.  *See Baldridge v. Kentucky-Ohio Transp., Inc.*, No. 95-5967, 1996 U.S. App. LEXIS 29123, *7 (6th Cir. Nov. 4, 1996) (noting that "state law claims for emotional distress arising solely from activities that constitute unfair labor practices are preempted by federal labor law")(citing *Farmer v. United Bhd. of Carpenters, Local 25*, 430 U.S. 290 (1977)("union discrimination in employment opportunities cannot itself form the underlying 'outrageous conduct'")).

bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

*Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th Cir. 1999)(citing *Yeager v. Loc. Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 453 N.E.2d 666, 671 (Ohio 1983)). To establish the requisite severe or serious emotional distress, a plaintiff must show that "a reasonable person, normally constituted, would be unable to cope adequately with the mental distress generated by the circumstances of the case." *Reynolds v. Wingers, Inc.*, 621 N.E.2d 1239, 1243 (Ohio Ct. App. 1993).

The Sixth Circuit, applying Ohio law, has held that "an employee's termination, even if based upon discrimination, does not rise to the level of extreme and outrageous conduct without proof of something more." *Godfredson*, 173 F.3d at 376; *see also Tackett v. Dept. of Rehab. and Correction*, No. 2006-06604, 2008-Ohio-3410, ¶ 27 (Ct. Claims 2008)("The act of terminating employment is not 'outrageous' conduct sufficient to form the basis of a claim of intentional infliction of emotional distress."). Were this not the case, then "every discrimination claim would simultaneously become a cause of action for the intentional infliction of emotional distress." *Godfredson*, 173 F.3d at 376.

The Sixth Circuit also has held that claims for emotional distress are preempted by § 301 of the LMRA "when the alleged outrageous conduct was governed by CBA provisions." *DeCoe*, 32 F.3d at 219.  For purposes of an emotional distress claim, a defendant has not acted outrageously "where he has done no more than to insist upon his legal rights in a permissible way, even though he was well aware that such insistence was certain to cause emotional distress." *DeCoe*, 32 F.3d at 219 (concluding that section 301 preempted the plaintiff's emotional distress claim); *see Went v. LaFarge Corp.*, 136 F.Supp.2d 741, 743-44 (N.D. Ohio 2001).

In *Went*, the plaintiff alleged intentional infliction of emotional distress as a result of his termination. *Id*. at 743.  The plaintiff's employment was subject to a collective bargaining agreement

which provided that the defendants could "terminate or otherwise relieve employees from duty for

lack of work or other legitimate reason." *Id*.  The court held that:

> If the Defendants merely pursued their right to discharge the Plaintiff under the CBA, their conduct in doing so cannot be outrageous; if their conduct went beyond mere enforcement of their rights under the CBA, then their conduct *may* be outrageous. In order to resolve this issue, the Court must refer to the CBA.  Accordingly, the Plaintiff's claim for intentional infliction of emotional distress is completely preempted by § 301 of the LMRA.

*Id*. at 743-44 (emphasis in original).[19]

It is unclear from the Complaint what conduct forms the basis of Dobrski's emotional distress

claim.  Dobrski simply alleges that Ford's "actions and conduct toward Mr. Dobrski resulted in the

intentional infliction of emotional distress upon Mr. Dobrski," and that he suffered damages as a

result.  (Doc. 1 at ¶¶ 49, 50.)  Dobrski's briefing repeatedly emphasizes his belief that he was

terminated due to his interest in Ford's safety procedures:

- "The termination at issue was in retaliation for Mr. Dobrski's continuing interest in enforcement of safety procedures."  (Doc. 7 at 9.)

- "The Defendant treated Mr. Dobrski with hostility as a result of his safety concerns, and ultimately retaliated against Mr. Dobrski because of the aforementioned safety concerns."  (*Id*. at 10.)

- "Mr. Dobrski was terminated because of his concern for safety concerns at

_____

[19]Other courts have similarly concluded that a plaintiff's emotional distress claim is preempted by § 301.  *See Fitzgerald*, 262 F.Supp.2d at 859 ("Plaintiff will not be able to show that defendants' behavior was outrageous without referring to the terms of the collective bargaining agreement, because defendants were acting under the terms of the agreement when they made the statements at issue in this case."); *See Lawrence v. Dixon Ticonderoga Co.*, 305 F.Supp.2d 806, 813 (N.D. Ohio 2004)(finding that, to resolve the plaintiff's emotional distress claim, "the court would have to review the CBA provisions relating to Defendants' right to manage and control the workforce, as well as procedures for health and safety concerns"); *Bradshaw*, 485 F.Supp.2d at 830; *but see Dalton v. Jefferson Smurfit Corp.*, 979 F.Supp. 1187, *46-48 (S.D. Ohio 1997)("As the outrageous conduct that forms the basis of the intentional infliction of emotional distress claim was not the result of Boyd exercising his rights under the collective bargaining agreement, § 301 preemption does not apply.").

the Defendant's facility, and specifically the Defendant's 'lock-out' procedures." (*Id*. at 13.)

Based on his briefing, therefore, it seems that the "outrageous conduct" forming the basis of Dobrski's emotional distress claim includes: (1) Ford's hostility toward him because of his safety concerns; and (2) Ford's decision to terminate him because of his safety concerns.[20]

As Ford points out, the CBA contains detailed provisions regarding the company's safety procedures – including lock out procedures – as well as special procedures for complaining about those safety procedures.  (Doc. 5-2 at 29-32, Article VII, Section 23(b) "Health and Safety Local Complaint Procedure").  In addition, the CBA contains provisions relating to Ford's right to manage and control the work place.  For example, Article IV, Section 5 of the CBA states:

> The right of the Company to make such reasonable rules and regulations, not in conflict with this Agreement, as it may from time to time deem best for the purposes of maintaining order, safety, and/or effective operation of Company plants, and after advance notice thereof to the Union and the employees, to require compliance therewith by employees, is recognized.  The Union reserves the right to question the reasonableness of the Company's rules or regulations through the Grievance Procedure.

(Doc. 5-2 at 11.)  Consequently, the merits of any discipline or discharge relating to safety concerns would require interpretation of the relevant provisions of the CBA.  The Court finds that, because Dobrski's emotional distress claim requires interpretation of the CBA and its provisions setting forth a specific complaint procedure for health and safety concerns, Count VIII is preempted under § 301.

Even if Dobrski's emotional distress claim were not preempted by the LMRA, it nonetheless would fail as a matter of law because Dobrski fails to allege any facts suggesting that he suffered

---

[20]To the extent Dobrski's emotional distress claim is based on his allegation that Ford discriminated against him based on age, that claim must also fail because "an employee's termination, even if based upon discrimination, does not rise to the level of extreme and outrageous conduct without proof of something more."  *See Godfredson*, 173 F.3d at 376.

"serious" emotional distress. This is particularly true in light of the well-established principle that termination of employment does not constitute "extreme and outrageous conduct" absent "proof of something more." *See Godfredson*, 173 F.3d at 376. As a result, Count VIII is **DISMISSED**.

### F. Count IX: Hybrid § 301 Claim

Count IX of Dobrski's Complaint seeks to assert a hybrid § 301 claim for violation of the LMRA. (Doc. 7 at 12.) As previously discussed, § 301 preempts a state law claim where resolution of the state claim "is inextricably intertwined with consideration of the terms of the labor contract." *Jones v. General Motors Corp.*, 939 F.2d 380, 382 (6th Cir. 1991)(quoting *Allis-Chalmers*, 471 U.S. at 213)). When a court finds that a state law claim is preempted by § 301, the claim is transformed into a hybrid § 301 claim. *Id.* at 384.

To prove a hybrid § 301 claim, an employee must demonstrate that: (1) the employer breached the CBA; and (2) the union breached its duty of fair representation. *Kunz v. United Food & Comm. Workers, Local 876*, 5 F.3d 1006, 1009 (6th Cir. 1993)(citing *Sparks v. International Union, United Automobile, UAW*, 980 F.2d 394 (6th Cir. 1992)); *Summers v. Keebler Co.*, 133 Fed. Appx. 249, 251 (6th Cir. 2005)(citing *DelCostello v. Teamsters*, 462 U.S. 151, 164-65 (1983)). These two claims are "inextricably interdependent." *Garrison v. Cassens Transp. Co.*, 334 F.3d 528, 538 (6th Cir. 2003)(citing *DelCostello*, 462 U.S. at 164)).

Ford argues that Dobrski's hybrid § 301 claim must be dismissed because the Complaint contains no facts supporting Dobrski's allegation that the UAW breached its duty of fair representation. In response, Dobrski contends that the allegations in the Complaint – that Ford terminated him in violation of the CBA and that the UAW failed to represent him fairly – are sufficient to state a plausible claim for relief.

Although an employee need not sue both his employer and the union, it is clear that he must

allege adequately *both* a violation of the CBA by the employer *and* a breach by the union of its duty

of fair representation.  *Brown v. Columbus Bd. of Ed.,* 638 F.Supp.2d 856, 867 (S.D. Ohio 2009);

*Garrison,* 334 F.3d at 538 n.8 ("In a hybrid § 301 suit, an employee may, if he chooses, sue one

defendant and not the other; but the case he must prove is the same whether he sues one, the other,

or both.").  Unless the plaintiff demonstrates both violations, he cannot succeed against either party.

*Garrison,* 334 F.3d at 538 (citing *Bagsby v. Lewis Bros. Inc. of Tenn.*, 820 F.2d 799, 801 (6th Cir.

1987)).

   To prove that the union breached its duty of fair representation, an employee must show that

"the union's actions or omissions during the grievance process were arbitrary, discriminatory, or in

bad faith." *Id.* at 538 (citing *Vaca v. Sipes*, 386 U.S. 171, 190 (1967)).  In *Garrison*, the Sixth Circuit

indicated that "[e]ach of these wrongs is mutually independent, meaning, that 'the three named

factors are three separate and distinct possible routes by which a union may be found to have

breached its duty." *Id*. (citing *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 584 (6th Cir.

1994)).  Where a plaintiff fails to "introduce factual allegations that the union breached its duty of

fair representation, dismissal based on Rule 12(b)(6) is proper." *Winters v. Ford Motor Co.*, No. 06-

CV-10263-DT, 2006 U.S. Dist. LEXIS 90243, *15 (E.D. Mich. Dec. 12, 2006)("In this case,

Plaintiff has not alleged any wrongdoing on the part of the UAW Local 900.  The Complaint alleges

only wrongdoing on the part of Defendant.  For this reason, Plaintiff's Complaint could be dismissed

under Rule 12(b)(6), as Plaintiff has not alleged any set of facts in support of an unfair representation

claim, which is required of a union-member plaintiff wishing to assert a hybrid section 301 claim.").

    A union is obligated to "undertake reasonable investigation to defend a member from

employer discipline." *Walk v. P\*I\*E Nationwide, Inc.*, 958 F.2d 1323, 1326 (6th Cir. 1992).

Although a union may not "arbitrarily ignore a meritorious grievance or process it in a perfunctory

fashion," an employee does not have an absolute right to have his grievance taken to arbitration. *Vaca*, 386 U.S. at 191; *see also Courie v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 631 (6th Cir. 2009)(noting that "the union is permitted to exercise its discretion in prosecuting grievances"). Indeed, the Supreme Court has specifically held that a union does not breach its duty of fair representation merely by settling a grievance prior to arbitration. *Vaca*, 386 U.S. at 192.

To succeed on his hybrid § 301 claim, Dobrski must prove both that Ford breached the CBA and that the UAW breached its duty of fair representation. In this case, Dobrski's Complaint alleges that: (1) Ford terminated him in violation of the CBA; and (2) the UAW "failed to represent Mr. Dobrski fairly pursuant to the CBA." (Doc. 1 at ¶¶ 52-53.) In his briefing, Dobrski states that he "has not had the opportunity to properly arbitrate the discharge, as provided in the collective bargaining agreement, as he has not been properly represented by his union representative related to the grievance filed." (Doc. 7 at 12.) As noted above, however, standing alone, the fact that the UAW did not pursue Dobrski's grievance through to arbitration is legally insufficient to support a claim for breach of the duty of fair representation. *See Vaca*, 386 U.S. at 191. The Complaint is devoid of any facts supporting Dobrski's allegation that the UAW breached this duty; it does not contain any basis upon which to sustain a claim that the UAW's actions or omissions during the grievance process were "arbitrary, discriminatory, or in bad faith." *See Garrison,* 334 F.3d at 538. Indeed, both the Complaint and his brief in opposition to the Motion to Dismiss are silent with respect to *any* actions taken by the UAW during the course of Dobrski's grievance process. Instead, Dobrski simply makes the conclusory allegation that UAW failed to represent him fairly.[21]

Because Dobrski's hybrid § 301 claim fails to allege *any* facts to support a claim that the

---

[21]As noted above, moreover, Dobrski has never sought to amend his Complaint. The Court must assume, accordingly, that he cannot readily remedy the deficiencies in it.

UAW breached its duty of fair representation, dismissal pursuant to Rule 12(b)(6) is proper.  *See Winters*, 2006 U.S. Dist. LEXIS 90243, at *15; *see also Iqbal*, 129 S.Ct. at 1949 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*. at 1949; *Twombly*, 550 U.S. 544, 555 (2007)("A formulaic recitation of the elements of a cause of action" is insufficient).  Accordingly, Count IX is **DISMISSED**.

## IV.    CONCLUSION

For the foregoing reasons, Defendant Ford Motor Company's Motion to Dismiss (Doc. 5) is **GRANTED in part and DENIED in part**.  Specifically, Ford's Motion is **GRANTED** in its entirety as to Counts I, II, IV, V, VII, VIII, and IX.  As to the sole remaining count, Count VI (whistleblower retaliation), Ford's Motion is **DENIED** solely to the extent Dobrski intends to rely on O.R.C. § 4113.52(A)(3), and no other part of the Ohio Whistleblower Statute.  Dobrski shall have **fourteen (14) days** from the date of this Order to amend his whistleblower retaliation claim to see if he can, in good faith, assert a cause of action under O.R.C. § 4113.52(A)(3).

IT IS SO ORDERED.

s/Kathleen M. O'Malley
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

Dated: March 16, 2010

37