PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| VINCENT DOBRSKI, | ) | CASE NO. 1:09CV00963 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| FORD MOTOR COMPANY, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendant. | ) | **ORDER** (Resolving ECF No. 60) |

Before the Court is the Report and Recommendation of Magistrate Judge Kenneth S. McHargh addressing Defendant Ford Motor Company's Motion to Dismiss Plaintiff's Complaint or, in the Alternative, Motion for Sanctions to be Determined After an Evidentiary Hearing (ECF No. 60).[1] ECF Nos. 67. Plaintiff Vincent Dobrski has timely filed objections to the Report. ECF No. 68.

Upon a *de novo* review of the record, the Court adopts the magistrate judge's Report (ECF No. 67) and Recommendation in its entirety and overrules Plaintiff's objections (ECF No. 68).

### I. Background

The Report and Recommendation accurately sets forth the facts relevant to Plaintiff's motion. In the interest of efficiency, the Court adopts and restates herein the Report and Recommendation's articulation of the factual and procedural background. To the extent

---

[1] District Judge Benita Y. Pearson assigned the above captioned case to Magistrate Judge Kenneth S. McHargh for general pretrial supervision, including the filing of a report containing proposed findings and a recommendation for resolution of case-dispositive motions. ECF No. 39.

(1:09CV00963)

necessary, the Court will elaborate on factual and procedural issues worthy of additional consideration.

### A. Factual & Procedural History

Plaintiff initially filed this action in the Cuyahoga County Court of Common Pleas on August 3, 2007, and Ford removed the case to this Court on Septmenber 11, 2007. *See* (Case No. 1:07-CV-02736, at Doc. 1). On January 31, 2008, Plaintiff's counsel filed a motion to withdraw as counsel of record, citing Ohio Disciplinary Rule 1.16(b)(6). *(Id.* at Doc. 11). Plaintiff, through his new counsel and with a stipulation from Ford, voluntarily dismissed the case without prejudice on April 29, 2008. (*Id* at Doc. 22). Plaintiff, represented by his third counsel,[2] refiled this case on April 27, 2009, alleging nine different causes of action. (Doc. 1).

On June 26, 2009, Defendant filed a motion to dismiss Plaintiff's case in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 5). On March 16, 2010, the Court granted Ford's motion in part and granted Plaintiff 14 days in which 'to amend his whistleblower retaliation claim to see if he c[ould], in good faith, assert a cause of action under O.R.C. § 4113.52(A)(3).' (Doc. 14). Plaintiff filed his Amended Complaint on March 29, 2010, alleging a single claim of whistleblower retaliation in violation of O.R.C. § 4113.52(A)(3). (Doc. 15).

On February 24, 2011, counsel for non-party witness, the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ('the UAW'), filed a motion requesting that the Court order Plaintiff to 'cease and desist from having any contact with the UAW, its members, employees, officers and agents, and to protect all and each of them from harassment, threats and/or interference by [] Plaintiff.' (Doc. 38). On March 2, 2011, Ford requested a stay of the proceedings to investigate the alleged misconduct by Plaintiff in connection with certain witnesses, as set forth in its motion filed on that date. (Doc. 41). On

---

[2] The merits of this action were originally before Judge Kathleen O'Malley in Case Number 1:07-CV-2736. At the time of the filing, Plaintiff was represented by Attorney Eric Hall. After Attorney Hall withdrew from the case, Attorney Robert Bauders filed a Notice of Appearance on Plaintiff's behalf (Doc. 14). That case terminated when Judge O'Malley approved the parties' Stipulation of Dismissal Without Prejudice. When the instant action was filed, Plaintiff was represented by his third attorney, Jason Mizak.

2

(1:09CV00963)

> March 4, 2011, the Court held a status conference during which it granted Ford's request and allowed Ford 30 days in which to investigate Plaintiff's alleged misconduct.[3] (Doc. 42). The Court also ordered Plaintiff to 'have no contact with the UAW's members, employees, officers, and agents, or any other witness, other than through counsel' (hereinafter referred to as the 'March Order'). (*Id*.)
>
> On March 28, 2011, Plaintiff's attorney, Jason Mizak, abruptly filed a motion to withdraw, citing Ohio Disciplinary Rule 1.16(b)(6), as did Plaintiff's previous counsel. (Doc. 44). After a status conference on March 31, 2011, the undersigned granted Attorney Mizak's motion, and granted Plaintiff 30 days to secure new counsel, consequently delaying the completion of Ford's investigation. (Doc. 47). On April 27, 2011, Ford notified the Court that Plaintiff allegedly violated the Court's March Order by contacting one of the UAW's employees. (Doc. 50).
>
> On May 2, 2011, the Court held an in-person status conference. As part of its investigation, Ford sought to propound interrogatories upon Plaintiff and requested to depose Plaintiff solely regarding his alleged misconduct. After failing to obtain new counsel, the Court ordered that Plaintiff be deposed without counsel. (Doc. 55). Plaintiff's deposition was taken on May 19, 2011, in the undersigned's chambers. At several points during the pendency of the deposition, Ford requested the Court's assistance arguing that Plaintiff was being uncooperative and engaging in inappropriate conduct during the deposition. As a result, the undersigned was compelled to 'sit in' on the deposition to oversee the process, and at times compelled to direct Plaintiff to give responsive answers to Defendant's questions.

ECF No. 67 at 1-3.

### B. Defendant's Investigation

Ford contends that Plaintiff committed egregious conduct toward four potential witnesses: Kevin Kalinowski ('Kalinowski'), Brian Goff ('Goff'), Jimmie Williams ('Williams'), and John Cain ('Cain'). Ford named Kalinowski and Goff as individuals likely to have discoverable information in its initial disclosures. (Doc. 60, Ex. B, at 4).

Kalinowski is the President and Chairman of UAW Local 420 and was involved in Plaintiff's grievances filed against Ford. (Doc. 38, Ex. 5, at 7-13). Kalinowski

---

[3] This discovery was solely limited to investigating Plaintiff's alleged harassing conduct.

(1:09CV00963)

testified that he contacted the police in April of 2007 after Dobrski began making threatening and harassing telephone calls to his home. (*Id*. at 41-42). The phone calls were alarming to Kalinowski because although Dobrski had never been invited to his home, Dobrski's prank phone calls referenced intimate details regarding Kalinowski's home and family (i.e. how many children Kalinowski had and where Kalinowski parked his car). (*Id*. at 42). Eventually, Kalinowski purchased a phone trap in order to confirm that the number from which he was receiving the calls belonged to Dobrski. (*Id*.). Even after filing the police report, Kalinowski stated that he received between 70 to 80 phone calls each day at various times throughout the day. (*Id*. at 43). In fact, on the day of Kalinowski's deposition, February 11, 2011, he testified that Plaintiff had called him 16 times in 40 minutes. (*Id*.) Although Kalinowski admitted that these phone calls ceased after the Court issued its March Order, he indicated that the calls resumed in mid April of 2011, though Kalinowski has refused to answer any of these calls. (Doc. 51, Ex. 2).

Goff is a bargaining committeeman at large for UAW Local 420 and participated in the union's grievance process by filing a grievance on Dobrski's behalf. (Doc. 38, Ex. 4, at 7-12). Goff also testified that Plaintiff placed threatening and harassing phone calls to his home both during the day and the evening. (*Id*. at 25). The deplorable content of the phone calls included offensive names which Dobrski used to refer to Goff (i.e. 'a__hole', 'cunt' or 'dildo'), false accusations Dobrski made that Goff molested his stepchildren, and statements Plaintiff made threatening to rape Kalinowski's family and 'f__' Goff into the ground if he did anything to help Kalinowski. (*Id*.) In or around February of 2010, Goff contacted the Tallmadge, Ohio Police Department regarding these phone calls; a police officer telephoned Dobrski and ordered him to stop calling Goff. (*Id*.) Since that time, Goff has not received any further calls from Dobrski. (*Id*. at 26). However, Goff saved many of the tapes from his answering machine which contain messages that Dobrski left. (*Id*.).

Williams was the Servicing Representative for the National Ford Department of the UAW during the relevant time period and worked in various aspects of Plaintiff's grievance against Ford; he currently serves as the Human Relations Director of the UAW. (Doc. 38, Ex. 1, at 1). Williams works in Detroit, Michigan. He indicated that since April of 2010, Plaintiff has called his cell phone approximately 1,000 times. (*Id*.) During the calls Plaintiff threatened Williams and used racial slurs and profanity. (*Id*. at 2). Williams claimed that Dobrski even used this offensive language when Williams's 10 year-old daughter answered his phone on one occasion. At some point, Williams contacted the Detroit Police Department in order to stop Plaintiff's harassing phone calls, but his efforts were unsuccessful because Dobrski lived outside of the department's

4

(1:09CV00963)

>    jurisdiction. (*Id*.) Williams contends that he has received 12 harassing calls from a blocked number since the issuance of the Court's March Order. (Doc. 51, Ex. 1). On one of the calls, he recognized the voice as that of Plaintiff. (*Id*.)
>
>    Cain was Plaintiff's co-worker at Ford. (Doc. 38, Ex. 3, at 7). He testified that Plaintiff engaged in a pattern of harassing behavior toward him. Cain stated that Dobrski tried to run him off the road while yelling obscenities out of his window. (*Id*. at 17-18). Cain also testified that in or around February of 2010, while he was driving past Plaintiff's home on his way home from work, Plaintiff again yelled obscenities at him and took several photos of him. (*Id*. at 19).
>
>    In the final analysis, Ford's investigation provided little in the way of new facts to supplement the allegations originally submitted in its motion to stay the proceedings, which included excerpts from deposition testimony and affidavits provided by potential witnesses. The most significant 'new' information, bearing on the motion before the Court, was Mr. Dobrski's conduct following the Court's issuance of the stay and during his deposition. Ford's ability to complete its investigation was thwarted by Mr. Dobrski's lack of cooperation, which the Court is convinced played a large role in his third retained counsel asking to withraw from his continued representation. Ultimately, that same conduct required the Court to have to 'babysit' Plaintiff's deposition, in order to bring this interruption in the prosecution of the case to a close.

ECF No. 67 at 3-5.

## II. Standard of Review

In cases that are referred to a magistrate judge for preparation of a Report and Recommendation, the Federal Magistrates Act requires that a district court conduct a *de novo* review only of those portions of a Report and Recommendation to which the parties have made an objection. 28 U.S.C. § 636(b)(1)(C). The district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id*.; *see also* Fed. R. Civ. Pro. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the

5

(1:09CV00963)

magistrate judge with instructions."). *See also* Local Rule 72.3(b).

### III. Discussion

The Sixth Circuit weighs four factors when considering whether to involuntarily dismiss a complaint: (1) whether the party's conduct is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that the failure to cooperate could lead to dismissal; and, (4) whether less drastic sanctions were imposed or considered before dismissal of the action. *Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586, 589 (6th Cir. 2001).

In his Report and Recommendation, the magistrate judge thoroughly examined each factor and recommends that the Court: (1) deny Defendant's request to involuntary dismiss Plaintiff's complaint; and (2) grant Defendant's request for sanctions.[4] ECF No. 67 at 6-10. In summary, the magistrate judge explained the following:

> The Court acknowledges its reluctance to recommend a remedy that would deny a party an opportunity to resolve its case on the merits. However, the Court is equally concerned with ensuring that the parties conduct themselves in a manner that respects the role the Court plays in the orderly administration of justice which, of course, requires that all parties have a fair opportunity to present and defend their claims. Although not recommending dismissal, Mr. Dobrski must be held accountable for delays occasioned by his egregious conduct which, at minimum, has contributed to the delay in the prosecution of this case. Such is also necessary to ensure that he sufficiently understands the unacceptibility of any recurrence of similar conduct.

ECF No. 67 at 10.

The magistrate judge further explained that his final recommendation on the nature of

---

[4] The magistrate judge also recommends that the Court deny Plaintiff's motion to extend discovery (ECF No. 57) and deny Plaintiff's motion to deny any further delay (ECF No. 62).

(1:09CV00963)

Defendant's sanction will be postponed until after a hearing on potential sanctions, all of which will be included in an additional Report and Recommendation to the District Court. ECF No. 67 at 10.

Plaintiff argues that the evidence for sanctions is "too thin," and the inferences drawn from the evidence are questionable or outweighed by contrary evidence. ECF No. 68 at 1. Plaintiff highlights the alleged contrary evidence in an attempt to demonstrate that he "did not harbor bad intent and Ford suffered virtually no prejudice." ECF No. 68 at 1-3.

Upon conducting its *de novo* review of the record, the Court finds that Plaintiff's objection lacks merit or, in the language of Plaintiff, is "too thin" to warrant a rejection of or modification to the magistrate judge's well-analyzed Report and Recommendation, which is adopted on this matter. *See* 12 CHARLES A. WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 3070.2 (2d ed.1997) ("In adopting a magistrate judge's recommendations, a district court need not state with specificity what it reviewed. It is sufficient for the court to say that it has engaged in a de novo review of the record and adopts the report and recommendations.") (internal citations omitted).

### IV.  Conclusion

Plaintiff Vincent Dobrski's objection to Magistrate Judge McHargh's finding is overruled (ECF No. 68) and the Report and Recommendation is adopted in its entirety (ECF No. 67).

Accordingly, Defendant's Motion To Dismiss Plaintiff's Complaint, or in the alternative Motion For Sanctions (ECF No. 60) is granted in part and denied in part. Defendant's request for sanctions is granted, and Defendant's request to dismiss the complaint is denied. The Court's

7

(1:09CV00963)

final recommendation on the nature of Defendant's sanction will be postponed until after a hearing on potential sanctions has been conducted by the magistrate judge and the results of that hearing included in a Report and Recommendation to the Court. Additionally, Plaintiff's motion to extend discovery (ECF No. 57) and Plaintiff's motion to deny any further delay (ECF No. 62) are denied.

    IT IS SO ORDERED.

| | |
|---|---|
| February 2, 2012 | /s/ Benita Y. Pearson |
| Date | Benita Y. Pearson |
| | United States District Judge |