PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| VINCENT DOBRSKI, | ) |
| | ) CASE NO. 1:09cv963 |
| Plaintiff, | ) |
| | ) |
| v. | ) JUDGE BENITA Y. PEARSON |
| | ) |
| FORD MOTOR COMPANY, | ) |
| | ) **MEMORANDUM OF OPINION AND** |
| Defendant. | ) **ORDER** [Regarding ECF No. 93; 95] |

On January 18, 2013, Magistrate Judge Kenneth S. McHargh issued a Report (R&R) recommending that Defendant Ford Motor Company's ("Ford") Motion for Summary Judgment (ECF No. 78) be granted. ECF No. 93. Plaintiff Dobrski objected (ECF No. 95), and Ford responded (ECF No. 97). For the reasons that follow, the Court adopts the R&R in its entirety.

**I. Background**

Dobrski worked at Ford's assembly line plant in Walton Hills, Ohio from September 1968 until April 2007. ECF No. 93 at 2. Over the years, Dobrski worked on various assembly lines in the plant. ECF No. 93 at 2. Dobrski alleges that during his employment, he complained to Ford about supervisors and employees who violated Ford's Energy Control and Power Lockout procedures[1] ("ECPL" or "the lockout procedures") and that his employment was eventually terminated by Ford, as a result of making these complaints. ECF No. 93 at 2.

---

[1] "ECPL [or lockout procedures] refers to the use of safety locks to control or isolate [t]he energy source on the specific piece of equipment on which an employee is performing maintenance work.  Placards posted on the equipment specifically instruct employees where the locks should be placed." ECF No. 78-1 at 7-8 n. 2 (internal citations omitted).

(1:09cv963)

In 2004, Dobrski made several anonymous and non-anonymous complaints to Ford's safety hotline. ECF No. 93 at 2. During these calls, Dobrski complained that employees who did not follow the lockout procedures received favorable treatment – *e.g.*, permitted to report to work late, leave early, sleep on the job, and drink and use illegal substances in the plant. ECF No. 93 at 2. Dobrski also reported that these same employees were receiving overtime pay for work they did not perform. ECF No. 93 at 2.

Dobrski also called Ford's hotline in February and March of 2007. ECF No. 93 at 3. During these calls, Dobrski complained about not receiving proper training and being sent home from work on Sundays due to this lack of training. ECF No. 93 at 3. In addition to the calls he placed to Ford's hotline in 2004 and 2007, Dobrski also claims to have made several safety complaints to various managers, supervisors and human resource personnel between 2004 and 2007. ECF No. 93 at 3. Dobrski reported, "hourly workers that did not lock out were given preferential treatment, and . . . [that] Mr. [Les] Stuck[, a supervisor,] . . . was improperly requiring a co-worker to enter a live area without locking out." ECF No. 81-3 at 1, ¶ 7.

In January 2007, Dobrski provided a written "Harassment Complaint Report" to Ford in which he complained, *inter alia*, that he was not scheduled for overtime work, allegedly because he locked out too much and, instead, employees who worked in an "unsafe" manner were scheduled to work overtime. ECF No. 93 at 3. This report also included Dobrski's complaints regarding not being trained on certain lines due to his habit of locking out. ECF No. 93 at 3. In February 2007, Dobrski relayed the same concerns to Theresa Parker, a representative of the International Union, United Automobile, Aerospace & Agricultural Implement Workers of

2

(1:09cv963)

America Local 420 (the "Union"), who prepared a written statement that Dobrski signed. ECF No. 93 at 3.

In early 2007, Dobrski ran for the position of vice-president with the Union. ECF No. 93 at 4. Dobrski distributed literature as part of his campaign. ECF No. 93 at 4. At some point in March 2007, Ford's Human Resources supervisor, Amy Adams ("Adams"), learned that two of the leaflets distributed by Dobrski contained what could be described as parodies about automobile manufacturing plants in China and Germany. ECF No. 93 at 4. Adams believed these parodies contained stereotypes which could be viewed as offensive. ECF No. 93 at 4.

On March 20, 2007, Adams met with Dobrski to take his statement regarding the content of these leaflets and to remind Dobrski of Ford's Zero Tolerance Policy. ECF No. 93 at 4. A Union representative was present at the meeting. ECF No. 93 at 4. During the meeting, Adams transcribed the content of their discussion, and at the conclusion of the meeting, asked Dobrski to sign it as his statement, which he did. ECF No. 93 at 4. The following day, Ford's Human Resources department received a complaint from one of its employees, John Cain, alleging Dobrski had exhibited harassing behavior toward him that morning while passing out campaign literature. ECF No. 93 at 4. Upon receipt of this harassment complaint on March 21, 2007, Ford suspended Dobrski pending investigation into the alleged conduct. ECF No. 93 at 4. On March 23, 2007, a second employee, Jim Litko, filed a harassment complaint against Dobrski regarding Dobrski's conduct toward him on March 19, 2007. ECF No. 93 at 4. Ford included this complaint in its ongoing investigation into Dobrski's harassing behavior against John Cain. ECF No. 93 at 4.

3

(1:09cv963)

The parties agree that Dobrski was not allowed on Ford's property while its investigation was pending. ECF No. 93 at 4. However, Ford maintains that at the conclusion of the investigation Adams tried to reach Dobrski by phone on April 13, 16, and 17, 2007, to notify him to report to the plant, but was unable to reach him. ECF No. 93 at 5. Ford claims that because its attempts to reach Dobrski by phone were unsuccessful, it sent Dobrski a letter *via* certified mail on April 18, 2007. ECF No. 93 at 5. The letter advised Dobrski to answer the letter, by returning to work within five working days of its date, or else Dobrski's employment would be terminated (the "five-day quit letter"). ECF No. 93 at 5. According to Ford, it terminated Dobrski after he failed to respond to the aforementioned letter, by either presenting to the plant or contacting Adams within the specified time frame. ECF No. 93 at 5.

Dobrski originally alleged that he did not receive Ford's letter.[2] ECF No. 93 at 5. Nevertheless, Dobrski purports that he attempted to report to the plant on April 16 and 19, 2007, but was denied entrance by Ford's security personnel. ECF No. 93 at 5. Following his termination, Dobrski filed the instant action alleging that Ford terminated his employment as a retaliatory measure against him for reporting what Dobrski believed to be unsafe employment practices at Ford's plant. ECF No. 93 at 5.

## II. Legal Standard

When an objection has been made to a magistrate judge's report and recommendation, the

---

[2] Ford alleges that "[a]fter the letter was sent and before the five day period elapsed, by coincidence, the Union's bargaining committeeman, Brian Goff, saw Plaintiff at an auto parts store and advised him that he needed to respond to the letter and report to the plant." ECF No. 78-1 at 11.

4

(1:09cv963)

district court standard of review is *de novo*. Fed. R. Civ. Pro. 72(b)(3). A district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. *Id*. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions. *Id.*

Accordingly, the Court has conducted a *de novo* review of the magistrate judge's report and has considered Dobrski's arguments raised in objection. For the reasons set forth below, the Court agrees with the recommendation of the magistrate judge.

### III.  Discussion

"The Ohio Whistleblower statute prohibits an employer from retaliating against an employee who reports the employer's wrongdoing." ECF No. 93 at 7 (citing OHIO REV. CODE § 4113.52; *Avery v. Joint Twp. Dist. Mem'l Hosp.*, 286 F. App'x 256, 261 (6th Cir. 2008)). Section (A)(3) of the statute provides:

> If an employee becomes aware in the course of the employee's employment of a violation by a fellow employee of any state or federal statute, any ordinance or regulation of a political subdivision, or any work rule or company policy of the employee's employer and the employee reasonably believes that the violation is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety, a felony, or an improper solicitation for a contribution, the employee orally shall notify the employee's supervisor or other responsible officer of the employee's employer of the violation and subsequently shall file with that supervisor or officer a written report that provides sufficient detail to identify and describe the violation.

R.C. 4113.52(A)(3).

To comply with Section (A)(3), the employee must:

(1) orally notify his supervisor or other responsible officer of the co-worker's alleged violation; (2) follow up with a written report providing sufficient detail to identify the alleged violation; and (3) reasonably believe that the violation was a

5

(1:09cv963)

> felony or [ ] "a criminal offense that is likely to cause imminent risk of physical harm to persons or a hazard to public health or safety."

ECF No. 93 at 7.

The magistrate judge recommended that summary judgment be granted in favor of Ford upon finding that Dobrski failed to satisfy two of the three elements necessary to state a *prima facie* case pursuant to the Ohio Whistleblower statute. ECF No. 93 at 21. The magistrate judge also determined, after assuming *arguendo* that Dobrski had established a *prima facie* case, that Ford had asserted a legitimate, non-retaliatory reason for terminating Dobrski and that Dobrski failed to present evidence showing that reason is pretext for retaliation. ECF No. 93 at 21-22. Dobrski objects to the magistrate judge's determination that he did not establish a *prima facie* case and also objects to the determination that he failed to establish pretext. ECF No. 95 at 5, 21.

### A. *Prima Facie* Case

To state a *prima facie* case pursuant to Ohio's Whistleblower statute, R.C. 4113.52, a plaintiff must show that: (1) he is entitled to protection under the act; (2) he was subject to an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action. *Klepsky v. United Postal Service, Inc.*, 489 F.3d 264, 271 (6th Cir. 2007) (quoting *Wood v. Dorcas*, 757 N.E.2d 17, 23 (Ohio Ct. App. 2001)).

#### 1. First Element: Protection Under the Act

Dobrski objects to the magistrate judge's findings that (1) neither of Dobrski's written reports satisfied the requirements of R.C. 4113.52(A)(3); (2) Dobrski failed to make a good-faith effort to determine the accuracy of the information reported; and (3) Dobrski did not have a reasonable belief the activity was criminal. ECF No. 95 at 5, 11, 16.

6

(1:09cv963)

### a. Written Reports

### i. Harassment Complaint Report

The magistrate judge determined that the Harassment Complaint Report failed to provide sufficient detail to pass muster under the whistleblower statute. ECF No. 93 at 12. The statute indicates that the employee's written report should contain "sufficient detail to identify and describe the violation." R.C. 4113.52(A)(3). The writing should contain enough detail to permit management to identify and correct the problem. *Haney v. Chrysler Corp.*, 121 Ohio App. 3d 137, 140 (Ohio App. Ct. 1997). Moreover, an employee must strictly comply with the dictates of R.C. 4113.52. *Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134, 153 (1997); *Kelly v. Lambda Research, Inc.*, 89 F. App'x 535, 544 (6th Cir. 2004); *Contreras v. Ferro Corp.*, 73 Ohio St.3d 244, 249 (1995).

The magistrate judge found that the report generally expressed Dobrski's grievance that certain employees were given, what Dobrski believed was, preferential treatment, and that the report did not identify and describe safety violations or allege that Dobrski was forbidden to lock out or that he was forced to work in unsafe environments. ECF No. 93 at 12. The magistrate judge concluded that the report would not have apprised Ford that Dobrski had concerns about the safety of the lockout procedures, and as a result, the report falls short of what is required by the statute. ECF No. 93 at 12.

Dobrski argues that the magistrate judge penalizes Dobrski for not alleging that he was forbidden to lock out or forced to work in unsafe environments. ECF No. 95 at 6 ("R&R's 'forbid/forced' standard goes too far"). Dobrski asserts that more subtle words or behavior, such

(1:09cv963)

as body language or facial expressions, would constitute a safety violation.[3] ECF No. 95 at 6.

   Contrary to Dobrski's protestations, the magistrate judge did not apply a more rigid "forbid/forced" standard than allowed by law.  Rather, the magistrate judge correctly concluded that Dobrski's passing reference to a safety requirement did not convey sufficient detail to identify or describe a violation rising to the level of a criminal offense, as required by the plain language of the whistleblower statute.  ECF No. 93 at 12.   Dobrski's assertion that "more subtle words or behavior" may constitute a safety violation as evidenced by "the affidavit of Ted Hetman" does not explain the absence of the description of a safety violation in the Harassment Complaint Report.  ECF No. 95 at 6.  Moreover, Dobrski misconstrues the magistrate judge's ruling as having suggested that an employee must clearly identify the underlying criminal law, not merely identify and describe the underlying behavior that violates the law.  ECF No. 95 at 8. The magistrate judge was not so exacting.  The R&R did not find the Harassment Complaint Report lacking because Dobrski failed to identify a criminal statute by name or number.  Rather, the report correctly concluded the report was lacking because Dobrski failed to describe with sufficient detail a safety violation.  See *Blackburn v. Am. Dental Ctrs*., 2011 WL 5825391, at *6 (Ohio. App. Ct., Nov. 17, 2011) (an employee is required to provide sufficient detail to identify

---

[3]  While admitting that his conclusion "is not crystal clear," Dobrski voices concern that the magistrate judge "put[] a premium on form over substance" when reviewing the harassment report because the magistrate judge allegedly relied too much on the fact that the overtime complaint sentence came first, and then "the discussion of safety" followed.  ECF No. 95 at 8. The R&R, however, does not suggest that the sequence of sentences influenced the magistrate judge's determination, and the undersigned is not inclined to adopt Dobrski's suspicion. Regardless of the order in which statements appear in the report, that document criticized overtime assignment and training.  Even a liberal reading does not support Dobrski's position.

(1:09cv963)

and describe the violations of law in her written report and a failure to do so does not comply with the mandates of R.C. 4113.52).

In sum, the Harassment Complaint Report, even when viewed in the light most favorable to Dobrski, reflects that Dobrski was troubled by the administration of overtime, nothing more.[4] In the section seeking "[d]etails of incident," Dobrski waxes on about "undocumented overtime" and "phoney hours," not safety violations. *See* ECF Nos. 7-1; 78-4 at 12. Dobrski offers statements attributed to Les Stuck berating him for "locking out too much," in support of his complaint that he has not been permitted to work on Sundays and not been trained on certain lines. ECF Nos. 7-1; 78-4 at 12. These statements cannot now, *post hoc*, be convincingly converted into those meant to expose a safety violation. The Court agrees with the magistrate judge's determination that the report does not apprise Ford that Dobrski had concerns about the safety of the lockout procedures or any other safety violation.

The Court therefore finds that the magistrate judge's determination is an accurate interpretation of the Harassment Complaint Report and in accordance with binding legal authority.[5]

---

[4] The magistrate judge relied on the correct standard employed for the review of motions for summary judgment. ECF No. 93 at 5-7. Dobrski did not object to that standard.

[5] The Court declines to "review this issue in light of Ford's overall safety program at the plant," to find that "the managers must have understood his message," as Dobrski urges. ECF No. 95 at 6. In support of his argument that the Court should ignore binding case law, Dobrski cites *Rheinecker v. Forest Laboratories, Inc.*, 813 F.Supp. 1307, 1311 (S.D. Ohio 1993) for the proposition that an "employer cannot bury its head in the sand and plead ignorance." ECF No. 95 at 6. But in *Rheinecker*, the plaintiff "sent a four page facsimile to his superiors in New York . . . . [which] included a two page 'Stability Assay Report' and a page from a lab notebook reporting the results of the failed stability test." 813 F.Supp. at 1311. The court rejected the

9

(1:09cv963)

### ii. Statement of Vince Dobrski

The magistrate judge concluded that a statement, transcribed by Human Resources Director Adams during a conversation with Dobrski, did not satisfy the requirements of R.C. 4113.52 because (1) Dobrski did not personally write the statement, and (2) the statement does not allege a criminal violation. ECF No. 93 at 13-14. Dobrski objects to both these findings. ECF No. 95 at 10.

The record reflects that Dobrski and Adams met to discuss allegations that campaign leaflets distributed by Dobrski violated of Ford's Zero Tolerance Policy. ECF No. 78-2 at 21. Adams summarized the meeting in a writing that was signed by Dobrski who now argues that because "he sat with Ms. Adams as she typed it"; because "she typed it in front of him, he knew the content and adopted it as his own"; and because "he did sign it and gave it back to her," Dobrski "did, in effect, prepare it, he did sign it," and can be said to have personally authored the written statement. ECF No. 95 at 10. The Court disagrees.

"Ohio courts have consistently denied whistleblower protection when the employee failed to personally author the written report in question." ECF No. 93 at 13 (citing *Abrams v. Am. Computer Tech.*, 860 N.E.2d 123,129 (Ohio Ct. App. 2006); *Shaffer v. OhioHealth Corp.*, 2004 WL 2806417, at *6 (Ohio Ct. App. 2004); *Blackburn*, 2011 WL 5825391 at *5). The magistrate

---

employer's argument that the plaintiff did not provide sufficient detail describing and identifying the violation. The instant case is inapposite *Rheinecker*. Importantly, the complaint in *Rheinecker*, was very detailed and unmistakable in its purpose. To the extent Dobrski's complaint made any concerns obvious, they were about overtime hours and preferential treatment. Ford cannot be expected to have mined Dobrski's esoteric complaint to uncover allegations that were not obviously, if at all, present.

(1:09cv963)

judge applied the correct law in concluding that the statement fails to satisfy the statutory requirements because Dobrski did not author it. ECF No. 93 at 13. *See e.g. Adams*, 860 N.E.2d at 129 (a letter prepared by the employer's lawyer summarizing a meeting with employee, and a meeting agenda co-authored by employee were insufficient written reports per R.C. 4113.52); *Shaffer*, 2004 WL 2806417, at *4, 6 (letter from employer's counsel to employee forwarded to employer at employee's request insufficient); *Blackburn*, 2011 WL 5825391 at *5 (report insufficient when employee did not personally author, sign, or submit letter; "nowhere in the statute does it indicate that someone acting on behalf of the employee or at the employee's request may forward a written report to the employer or that the report may be authored by a third party," citing *Shaffer*).

The magistrate judge also found that the statement failed to allege a criminal violation. ECF No. 93 at 14. The magistrate judge noted that,

> [a]lthough Plaintiff referred to two federal statutes in this report, the Sarbanes-Oxley Act of 2002 and the Racketeer Influenced and Corrupt Organizations Act ("RICO")[ ], neither of Plaintiff's references were related to violations of Ford's ECPL. Plaintiff mentioned the Sarbanes-Oxley Act to argue that Ford was doctoring his training records. Then, near the end of his discussion with Adams, he referenced RICO, warning Adams that her interference with the Union's election was a violation of the act. Yet, Plaintiff never alleged any criminal violation or criminal statute with regard to the lockout procedures.

ECF No. 93 at 14. *See also* ECF No. 78-2 at 22-23.

Dobrski asserts that in the statement he also says "I lock out [ ] Ford [p]roperly and I still do not lock out right . . . . I am told I am slowing down the line because I lock out . . . . If you lock out properly, you are harassed, interrogated." ECF No. 95 at 11. However, the statement suffers from the same infirmary as the Harassment Complaint Report— Dobrski primarily

11

(1:09cv963)

complains about the lockout procedure in regards to his grievance about overtime and training. ECF No. 78-2 at 21-23. Dobrski still fails to provide sufficient detail of a criminal violation regarding the lockout procedure. The Court once again declines to accept Dobrski's invitation to "view[] his statement against the background workplace safety law" to find that Dobrski provided sufficient detail. ECF No. 95 at 11.

### iii. Good Faith Requirement

Ohio's Whistleblower statute requires the employee to make a "reasonable and good faith effort to determine the accuracy of any information so reported." R.C. 4113.52(B). "[E]ach informational component of that report—the violation, its criminality, and the risk to public safety— is information so reported." *Fox v. Bowling Green*, 668 N.E.2d 898, 901 (Ohio 1996) (citing R.C. 4113.52(B)); *Hill v. Mr. Money Finance Co. & First Citizens Banc Corp.*, 309 Fed.App'x. 950, 957 (6th Cir. 2009).

The magistrate judge concluded that Dobrski did not provide sufficient evidence that he made a good faith effort to verify the criminality of Ford's alleged violations because Dobrski did not take affirmative steps to determine the accuracy of his belief in the criminal nature of the conduct, as required by *Hill*. ECF No. 93 at 15. The magistrate judge rejected Dobrski's arguments that seeing a poster at the plant stating that it was a crime to work unsafely and his familiarity with Occupational Safety and Health Administration ("OSHA") regulations satisfied the good faith effort. ECF No. 93 at 15.

Dobrski objects to the magistrate judge's determination, arguing that he need not comply with the affirmative step requirement in *Hill* because his observation of Ford's safety poster gave

12

(1:09cv963)

him all the information he needed.[6] ECF No. 95 at 12.  The Court disagrees.

Dobrski took no "affirmative steps" to discover whether and what alleged safety crimes were committed.  His averment that because the poster "dropped in his lap," additional affirmative steps are unnecessary, is without merit.[7] ECF No. 95 at 12; *Hill*, 309 Fed.App'x. at 960 (finding that, although the plaintiff read the statute on embezzlement and bank fraud, this was insufficient to show that the plaintiff had put forth a reasonable and good faith effort into determining whether the conduct he alleged occurred was criminal).

### b. Reasonable Belief of Criminal Activity

To qualify for protection under Ohio's Whistleblower statute, an employee must report a violation which "the employee reasonably believes . . . is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety, a felony, or an improper solicitation for a contribution." R.C. 4113.52(A)(3); *Brooks v. Martin Marietta Util. Servs.*, 1998 WL 739890, at *4 (6th Cir. Oct. 8, 1998); *Blackburn*, 2011 WL 5825391 at *4.  "In

---

[6] Dobrski objects to the magistrate judge's conclusion that "it is unlikely that a jury would find Dobrski made a reasonable and good faith effort to determine whether Ford's conduct was criminal in nature." ECF No. 95 at 11.  Dobrski asserts that the "'unlikely' standard is not a correct statement of law." ECF No. 95 at 12.  The Court notes that the R&R clearly stated that Dobrski "has not provided sufficient evidence that he made a good faith effort to verify the criminality of Ford's alleged violations," and "Plaintiff's observation of a poster. . . do[es] not equate with conducting a reasonable and good faith inquiry into whether Ford's alleged conduct was criminal." ECF No. 93 at 15.  The inclusion of the word "unlikely" in the last sentence of that section does not render the findings in that section legally incorrect.  The Court, having reviewed the record, agrees with the magistrate judge and finds that no reasonable juror could find that Dobrski is entitled to a verdict.  See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[7] Dobrski also makes this argument as to the OSHA inspectors he observed at the plant, which is equally unavailing.  ECF No. 95 at 13.

13

(1:09cv963)

other words, at the time in question, the employee must have *reasonably believed* that the alleged violation was either (1) a criminal offense that was likely to cause imminent risk of physical harm; (2) a criminal offense that was likely to cause a hazard to public health or safety; or (3) a felony." ECF No. 93 at 16 (emphasis in original) (citing *Brooks*, 1998 WL 739890 at *4; *Naples v. Rossi*, 2005 WL 3536478, at *8-9 (Ohio Ct. App., Dec. 21, 2005)).

     The magistrate judge found that, at the time Dobrski lodged his complaints with Ford, he did not believe that any of the violations of which he complained constituted criminal activity. ECF No. 93 at 17. The magistrate judge based this determination upon Dobrski's deposition testimony wherein Dobrski clearly stated that he did not at the time believe that Ford's actions were criminal in nature. ECF Nos. 93 at 15-16; 86-6 at 7-12. The magistrate judge rejected a later-filed affidavit wherein Dobrski stated that at the time he made his oral and written reports he did believe the conduct was criminal. ECF Nos. 93 at 17-21; 81-3 at 2.

     Dobrski objects to the magistrate judge's finding that Dobrski did not believe the conduct was criminal at the time he complained to Ford, and in support cites the later-filed affidavit. ECF No. 95 at 14. Dobrski attempts to resolve the evidentiary conflict created by his inconsistent sworn statements by asserting that, in his earlier deposition, he had forgotten about the poster, which he later alleges caused him to believe that the conduct was criminal at the time he complained.[8] ECF No. 95 at 15.

---

[8] Dobrski, in his later-filed affidavit, also stated that the presence of OSHA inspectors at the plant caused him to believe that the activity was criminal at the time he complained. ECF No. 95 at 15. This argument fails for the same reason Dobrski's poster argument fails.

14

(1:09cv963)

The Court is unpersuaded. The deposition reflects that Dobrski was asked numerous times in very precise language whether he thought Ford's conduct was criminal. ECF No. 86-6 at 7-12. Dobrski repeatedly said no— that he learned of its criminality later. ECF No. 86-6 at 7-12. The magistrate judge properly rejected the later-filed affidavit based upon *Brooks*, 1998 WL 739890, at *6 ("A party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, contradicting his earlier deposition testimony," citing *Reid v. Sears, Roebuck and Co.*, 790 F.2d 453, 460 (6th Cir. 1986)).[9]

### 2. Third Element: Casual Connection

The magistrate judge also found that Dobrski failed to satisfy the third element of his *prima facie* case: establishing a causal link between the protected activity and the adverse employment action taken against him. ECF No. 93 at 24.

To establish a causal connection, "a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken" had the plaintiff not engaged in the protected activity. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000) (citing *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997)). The mere fact that the adverse employment action followed protected activity will not always conclusively establish causation. *Avery v. Joint Twp. Dist. Mem'l Hosp.*, 504 F. Supp. 2d 248, 258-59 (N.D.Ohio 2007); *Stevens v. Thetford Twp.*, 475 F. App'x 556, 560-61 (6th Cir. 2012).

---

[9] Dobrski also argues that a "deponent is not required to volunteer information not fairly sought by the question, and a subsequent affidavit is not barred if the party was not directly questioned about an issue." ECF No. 95 at 15. Dobrski's assertion that "Ford's counsel merely asked some general questions about the existence of criminal statutes" is belied by the deposition transcript.

15

(1:09cv963)

While, at times, temporal proximity alone has been sufficient to establish causation, *Chester v. Quadco Rehabilitation Ctr.*, 484 F. Supp.2d 735, 743-44 (N.D.Ohio 2007), at other times the plaintiff is required to show something more to establish causation. *Stevens*, 475 F. App'x at 560-61; *Avery*, 504 F. Supp.2d at 258-59.

Dobrski argues that the magistrate judge erred in requiring evidence beyond the temporal proximity of Dobrski's complaints and his termination. ECF No. 95 at 19. He argues that because the complaints were made prior to his termination–by three months (in January 2007) and one month (in March 2007)--timing alone establishes causation. ECF No. 95 at 19.

Dobrski's argument is contrary to case law and the magistrate judge's rationale. *See Nguyen*, 229 F.3d at 566-67. The magistrate judge correctly found that, because of the complexity of the sequence of events leading to Dobrski's termination, Dobrski could not establish causation by temporal proximity alone. ECF No. 93 at 23. The complexity of the sequence of events include Dobrski submitting complaints beginning in 2004 without adverse action; Ford's investigation into whether Dobrski violated its Zero Tolerance Policy, which commenced in March 2007; and Dobrski's failure to respond to the five-day quit letter in April 2007. ECF No. 93 at 24. The case law relied upon in the R&R is relevant and properly applied. Accordingly, the Court overrules Dobrski's objection and finds that, under the circumstances presented in this case, temporal proximity alone is not sufficient to establish causation.

Dobrski next argues that the magistrate judge did not adequately credit his additional evidence to establish causation. ECF No. 95 at 19. The additional evidence presented included: management telling Dobrski that he locked out too much; Ford's concern with its bottom line;

16

(1:09cv963)

Ford's decision to suspend Dobrski pending the investigation rather than some less drastic sanction; and assigning other employees to perform work instead of Dobrski. ECF No. 93 at 24. The magistrate judge considered the evidence and reasonably concluded that none of it tends to show that Ford fired Dobrski due to his complaints regarding the lockout procedures. ECF No. 93 at 24. Dobrski disagrees with this conclusion but does not advance legal authority or analysis to meaningfully challenge it.[10] The magistrate judge correctly found that the additional evidence presented is not that upon which an inference could be drawn that Dobrski's termination was in retaliation for engaging in protected activity. *See* Nguyen, 229 F.2d at 567.

The Court therefore overrules Dobrski's objections to the R&R and adopts the recommendation that Dobrski failed to establish a *prima facie* case pursuant to Ohio's Whistleblower statute.

---

[10] Specifically, Dobrski objects to the magistrate judge's reliance on Leitgun v. Franciscan Skemp Healthcare, Inc., 630 F.3d 668, 676 (7th Cir. 2011) when determining that a reasonable juror would not conclude that two written complaints filed in 2007 would suddenly cause Ford to terminate Dobrski given that Dobrski had been complaining for several years prior to his termination. ECF No. 95 at 20. Dobrski argues that "there is nothing in this case that demands application of the *Leitgen* approach," and that "the most recent complaint can simply be the straw that broke the camel's back." ECF No. 95 at 20. Dobrski does not cite legal authority for his "straw" position and the Court is unpersuaded by the argument.

Dobrski also objects to the magistrate judge's reliance on Taylor v. H.B. Fuller Co., 2008 WL 4647690, at *9 (S.D.Ohio Oct. 20, 2008). ECF No. 95 at 20. In so doing, however, Dobrski misconstrues the magistrate judge's use of *Taylor*. ECF No. 95 at 20. The magistrate judge relied on *Taylor* when reasoning that an affidavit from Dobrski's former co-worker whom had also been suspended from work due to general misconduct and harassment showed that other employees engaged in similar conduct were treated similarly, *i.e.* like Dobrski. ECF No. 93 at 25. By analogy, *Taylor* shows that a causal connection can be established by an employee who was treated differently from other similarly situated employees. This concept does not support Dobrski's argument that his suspension was caused by his protected activity, rather than co-worker complaints of harassment.

(1:09cv963)

### B. Pretext

If a plaintiff establishes a *prima facie case*, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the action taken. *Klepsky*, 489 F.3d at 272. If met, the burden shifts back to the plaintiff to establish that the defendant's stated reason was a pretext for retaliation. *Id.* "A plaintiff can show pretext by demonstrating that: (1) the proffered reason has no basis in fact, (2) the proffered reason did not actually motivate the employer's action, or (3) the proffered reason was insufficient to motivate the employer's action." ECF No. 93 at 25 (citing *Chen v. Dow Chemical Co.*, 580 F.3d 394, 400 (6th Cir. 2009) (citing *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 460 (6th Cir. 2004))). "Throughout this burden-shifting approach, the plaintiff continues to bear the ultimate burden of proving, by a preponderance of the evidence, the intent to discriminate. " ECF No. 93 at 25-26 (citing *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993))).

The magistrate judge found that Ford had come forward with a legitimate, non-retaliatory reason for terminating Dobrski— he failed to respond to the five-day quit letter within the allotted time. ECF No. 93 at 26. Dobrski had maintained that he responded to the five-day quit letter within the allotted time when he went to the plant on April 19, 2007, but that the security guard at the plant denied him access. ECF No. 93 at 26. The magistrate judge, relying upon *Chen* and the "honest belief" doctrine, correctly determined that even if Dobrski had been precluded from entering the plant, if Ford was unaware of Dobrski's attempt, Ford reasonably and honestly relied on particularized facts in making an employment decision. ECF No. 93 at 27.

(1:09cv963)

Dobrski objects to the magistrate judge's determination that Ford honestly believed Dobrski did not respond to the five-day quit letter.[11] ECF No. 95 at 22. Dobrski contends that because the guard refused him entrance on April 19, 2007, "[i]t must be a reasonable inference that the guard was following orders.  Therefore someone in management did [not] want [ ] Dobrski to return, for all the wrong reasons." ECF No. 95 at 22. Dobrski offers no evidence in support of this allegation, or any other evidence to refute Ford's assertion that Ford honestly believed that Dobrski had failed to respond to the five-day quit letter by not presenting himself to the plant or contacting Adams within the specified time frame.

"Mere conclusory and unsupported allegations, rooted in speculation, do not meet [the Rule 56] burden."  ECF No. 93 at 28 (citing *Bell v. Ohio State University*, 351 F.3d 240, 253 (6th Cir. 2003)(quoting *Bryant v. Com. of Ky.*, 490 F.2d 1273, 1274 (6th Cir. 1974) (*per curiam*))). Dobrski's contention that "locking out affects Ford's bottom line, and lingering animosity from filing grievances in 2004" are solid examples of evidence that expose pretext was properly rejected by the magistrate judge.  ECF No. 93 at 27-28.  Similarly unavailing is Dobrski's argument that the magistrate judge should have given weight to the evidence that Ford could have taken less drastic action against Dobrski instead of suspending him.  Bending to Dobrski's wish would contravene the bedrock standard that courts "do[] not sit as a

---

[11] Dobrski objects to footnote 13 of the R&R, wherein the magistrate judge noted a discrepancy in Mosell Bowman's deposition testimony and later affidavit about the actual date he and Dobrski allegedly went to the plant. ECF No. 95 at 21. However, this objection has no bearing on the merits of Dobrski's argument because the magistrate judge merely noted the discrepancy and "presume[d] the truthfulness of these statements" in analyzing the pretext issue. ECF No. 93 at 26.

19

(1:09cv963)

super-personnel department that reexamines an entity's business decision . . . . The question is not whether the employer exercised prudent business judgment . . . but whether the plaintiff has come forward to refute the articulated, legitimate reason for the employment decision." *See* ECF No. 93 at 28 (citing *Toledo v. Jackson*, 2005 WL 3088545, at *4 (W.D.Ky. Nov. 14, 2005) (quoting *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464-65 (7th Cir. 1986))).

Dobrski's objections to the magistrate judge's finding that Ford's reason for terminating Dobrski was legitimate and non-retaliatory are overruled.

### IV.  Conclusion

For the reasons stated above, the Court adopts the Report and Recommendation (ECF No. 93) in its entirety.  Accordingly, Ford's Motion for Summary Judgment (ECF No. 78) is granted.


IT IS SO ORDERED.


| | |
|---|---|
| March 28, 2013 | */s/ Benita Y. Pearson* |
| Date | Benita Y. Pearson |
| | United States District Judge |